Paul Hoffman, SBN 71244
Michael Seplow SBN 150183
John Washington SBN 315991
SCHONBRUN, SEPLOW, HARRIS,
HOFFMAN & ZELDES LLP
9415 Culver Blvd. #115
Culver City, CA 90232
t. 310 396-0731
hoffpaul@aol.com
mseplow@sshhzlaw.com
jwashington@sshhzlaw.com

Humberto M. Guizar, Esq. (SBN 125769)
*hguizar@ghclegal.com*
Christian Contreras, Esq. (SBN 330269)
*cconterras@ghclegal.com*
LAW OFFICES OF HUMBERTO
GUIZAR, APC
Justice X Building
3500 W. Beverly Blvd.
Montebello, CA 90640
Telephone: (323) 725-1151

*Attorneys for Plaintiffs.*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| | |
|---|---|
| JESSICA WOODWARD, SCOTT TAYLOR, ERIK BOYD AND VISHAL SINGH,<br><br>PLAINTIFFS,<br>v.<br><br>CITY OF LOS ANGELES, a municipal entity, JOHN JENAL, an individual, and DOES 2-10 inclusive,<br><br>DEFENDANTS. | Case No.: 2:22-cv-01306-GW-JEM<br><br>**FIRST AMENDED COMPLAINT FOR DAMAGES**<br><br>42 U.S.C. § 1983: FIRST, FOURTH AND FOURTEENTH AMENDMENTS; TOM BANE CIVIL RIGHTS ACT (CIVIL CODE § 52.1); BATTERY, NEGLIGENCE<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Jessica Woodward, Vishal Singh, Scott Taylor, and Erik Boyd make the following allegations on information and belief in support of this Complaint.

## I.    INTRODUCTION

1.    Earlier this year, the U.S. District Court for the Central District of California entered a temporary restraining order, which was then made a preliminary injunction, restricting the Los Angeles Police Department ("LAPD") from using projectiles of 40 mm and 37 mm against peaceful protesters. In particular, such projectiles can only be used when absolutely necessary to prevent serious injury to others. Moreover, such projectiles should be used from a distance of at least five feet. *See Black Lives Matter, et al v City of Los Angeles*, Case No.CV 20-5027 CBM (ASx); Dkt. Nos. 90 and 101.

2.    Despite the unequivocal terms of the injunction in the *Black Lives Matter* case, on July 17, 2021, LAPD officers violated the injunction by using 40 mm and/or 37 mm projectiles against various peaceful protesters in connection with a counter demonstration at the Wi Spa in Koreatown. Indeed, the LAPD used 37 mm and/or 40 mm projectiles against some of the named Plaintiffs, including Jessica Woodward, Scott Taylor and Erick Boyd, and others, even though these protesters were not violent or threatening and/or were within 5 feet of the officers who deployed the projectiles.

3.    As a result of the LAPD's violation of the preliminary injunction, and other uses of excessive force, Plaintiffs and other non-violent protesters suffered serious injuries, in addition to being deprived of their constitutional right to engage in peaceful protests.

## II.    PARTIES

4.    Plaintiff Jessica Woodward was present in the vicinity of the Wi Spa on July 17, 2021, where she was engaging in non-violent and non-threatening protest activities when she was subjected to the use of excessive force by LAPD

**FIRST AMENDED COMPLAINT FOR DAMAGES**

officers who fired 40 mm projectiles and/or 37 mm projectiles against Plaintiff and others who were not violent or threatening and who were within five feet of the officer. Plaintiff Woodward was struck by a projectile in her buttocks and sustained serious injuries. When Plaintiff Woodward was struck by a projectile in her buttocks, she was running away from LAPD officers. Plaintiff Woodward was within a few feet of LAPD officers when she was struck by the projectile. Plaintiff Woodward was struck by a projectile which caused a six (6) by six (6) inch bruise in her buttocks as shown below. After being struck by the projectile, Plaintiff Woodward left the area of the protest and sought medical attention at a medical center in Van Nuys.



5.      Plaintiff Scott Taylor is a Service Connected Veteran who fought for this country; Army, OIF (Iraq) in 2003-2004. Based upon Plaintiff Taylor's experience with LAPD, Plaintiff Taylor believed it was in the best interest of the public for Plaintiff Taylor to observe and document what was going on at the Wi Spa protest on July 17, 2021. Plaintiff Taylor was in the process of observing and was acting peacefully when was he was shot in the leg by a 37 mm or 40 mm projectile by the LAPD. Plaintiff Taylor was engaging in non-violent and non-threatening first amendment activities when he was subjected to the use of excessive

**FIRST AMENDED COMPLAINT FOR DAMAGES**

force by LAPD officers. Plaintiff Taylor was struck by a projectile in his leg and sustained serious injuries. As shown below the projectile left a large permanent scar. Plaintiff Taylor was in severe pain for weeks as a result of this injury. Plaintiff Taylor also has permanent disfigurement in the area where he was struck by the projectile.

 

6.      Plaintiff Erik Boyd was present in the vicinity of the Wi Spa on July 17, 2021, where he was engaging in non-violent and non-threatening first amendment activities when he was subjected to the use of excessive force by LAPD officers who fired 40 mm projectiles and/or 37 mm projectiles against Plaintiff and others who were not violent or threatening and/or who were within five feet of the officer. Plaintiff Boyd was struck by a projectile in his leg and sustained serious injuries. Plaintiff Erik Boyd was near a fence attempting to help others to safety into La Fayette Park when an officer shot him with 40 mm projectiles and/or 37 mm projectiles from several feet away.  As shown below, Plaintiff Boyd sustained bruising as a result of being shot by the projectile.



**FIRST AMENDED COMPLAINT FOR DAMAGES**

7.      Plaintiff Vishal Singh was present in the vicinity of the Wi Spa on July 17, 2021 where he was acting peacefully as a journalist covering the protests and the LAPD response when he was subjected to the use of excessive force by LAPD officers. Plaintiff Singh was recording the LAPD response on his cell phone when he was violently struck on his hand by an LAPD officer using a metal baton. Plaintiff Singh suffered a broken hand as a result of the LAPD's use of excessive force as shown below. Plaintiff is informed and believes and thereon alleges that the LAPD officer who struck him with the baton is Defendant John Jenal, whose badge number is 23703.



8.      Prior to the filing of this action, Plaintiffs timely filed claims with the City of Los Angeles and have duly complied with the provisions of the Government Claims Act with respect to any claims for damages under state law.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

9.     Defendant City of Los Angeles is a municipal corporation duly organized and existing under the Constitution and laws of the State of California. The Los Angeles Police Department ("LAPD") is a local government entity and an agency of Defendant City of Los Angeles, and all actions of the LAPD are the legal responsibility of the City of Los Angeles. The City of Los Angeles is sued in its own right on the basis of its policies, customs, and practices which gave rise to Plaintiffs' federal rights claims.

10.     Plaintiffs are informed and believe that Defendant LAPD Officer John Jenal (Badge No. 23703) (previously identified as Doe 1) is a California peace officer who was employed by the LAPD and acting under color of law at the time of the subject incident. Plaintiffs allege that Defendant Jenal used excessive force against Plaintiff Singh by striking him in the hand with a baton without justification. Defendant Jenal is being sued in his individual capacity.

11.     Plaintiffs are informed, believe, and thereupon allege that Does 2 through 10 were the agents, servants, and employees of Defendants City of Los Angeles and/or the LAPD. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as Does 2 through 10, inclusive, and therefore sue these Defendant by such fictitious names. Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained. The individual Doe Defendants are sued in both their individual and official capacities.

12.     Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto Does 2 through 10, in addition to the named Defendants, are responsible in some manner for the damages and injuries alleged herein.

13.     Plaintiffs are informed, believe, and thereupon allege that at all times relevant hereto Defendants, and each of them, were the agents, servants and employees of the other Defendants and were acting at all times within the scope of their agency and employment and with the knowledge and consent of their principal and employer. At all times Defendants were acting under color of state law.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

14.     Plaintiffs are informed, believe, and thereupon allege that the practices, policies, and customs of the City of Los Angeles and/or the LAPD caused the unlawful actions taken against Plaintiffs.

15.     Plaintiffs are informed and believe and thereon allege that additional persons were injured by Defendants' unconstitutional and unlawful actions. Therefore, Plaintiffs reserve the right to seek leave to add additional plaintiffs and/or to add class action allegations to this complaint.

## III.    FACTUAL BACKGROUND

16.     In the wake of the brutal murder of George Floyd by a Minneapolis police officer in May 2020, thousands of people participated in peaceful protests against police brutality nationwide, including protests in the City of Los Angeles. Unfortunately, the LAPD's response to these largely peaceful protests was to use excessive force, including so called nonlethal projectiles of 40mm and 37mm against nonthreatening protesters, which resulted in serious and permanent injuries. In response to the LAPDs unlawful handling of these protests, Black Lives Matter and other plaintiffs sued the City of Los Angeles and Police Chief Michel Moore seeking both damages and injunctive relief under federal and state law. Specifically, the Plaintiffs in the *BLM* action sought a temporary restraining order and preliminary injunction seeking to restrict the LAPD's use of 37mm and 40 mm projectiles against non-violent protesters based on the fact that peaceful protesters were continuing to be injured by these dangerous weapons. The Court considered the substantial briefing and evidence submitted by both sides and as a result issued a Temporary Restraining Order restricting the LAPD's use of 37 mm and 40 mm projectiles against peaceful protesters on April 29, 2021. *See Black Lives Matter, et al v City of Los Angeles*, Dkt. No. 90. The TRO was subsequently made into a Preliminary Injunction on May 6, 2021. *Id.* Dkt. No.101

17.     The operative injunction against the LAPD contains the following terms:

**FIRST AMENDED COMPLAINT FOR DAMAGES**

1. LAPD is restricted from using the 40mm and 37mm launchers in public demonstrations except by officers who successfully completed Department training and meet all annual qualification requirements on the weapons;

2. An officer may use 40mm less-lethal munitions only when the officer reasonably believes that a suspect is violently resisting arrest or poses an immediate threat of violence or physical harm. The use of 40mm less-lethal munitions should be preceded by a warning, if feasible, consistent with the Use of Force Warning set forth in LAPD Use of Force – Tactics Directive No. 17;

3. An officer may use 37mm less-lethal munitions as a crowd control tool only with the prior approval of the incident commander and only when a dispersal order has been issued, unless immediate action is necessary to stop violence, to ensure public safety and restore order. A warning to disperse must be given, consistent with all of the dispersal order requirements set forth in LAPD Use of Force – Tactics Directive No. 11.1, and then the officer may fire the 37 mm at the ground 5 to 10 feet in front of the crowd. The 37 mm may not be used as a target specific munition unless absolutely necessary to prevent imminent serious bodily injury to the officer or others;

4. The 40mm launcher must not be used to target the head, neck, face, eyes, kidneys, chest, groin or spine of a person.

5. The 40 mm and 37 mm launchers should only be fired at a distance of five feet or greater from another person, unless an officer or other person is attacked and there is a threat of imminent serious harm.

18.    In July 2021, within two months of the issuance of the TRO and injunction restricting the LAPD's use of 37mm and 40mm munitions, protests and counter protests sprung up near the Wi Spa in the Koreatown section of Los Angeles. The Wi Spa, in compliance with applicable laws, allows trans-women guests to use the women's spa facilities. This angered several right-wing agitators who began to congregate and protest the Wi Spa. Many of these anti LGBTQ protesters were not peaceful and engaged in violent and threatening conduct. In response to these anti

**FIRST AMENDED COMPLAINT FOR DAMAGES**

LGBTQ protesters, several pro LGBTQ protesters also appeared to show their support for the Wi Spa and for the LGBTQ Community. In contrast to many of anti LGBTQ protesters, the pro LGBTQ protesters were largely peaceful and non-violent.

19.    In response to the pro and counter Wi Spa demonstrations, the LAPD deployed numerous officers to the scene of the protests. Instead of respecting the rights of the peaceful protesters and taking action against the violent and disruptive anti LGBTQ protesters, the LAPD failed to take appropriate action against the anti LGBTQ protesters who engaged in violent and threatening actions. In contrast, despite the fact that the pro LGBTQ protesters were largely peaceful, the LAPD nonetheless declared an unlawful assembly and directed unreasonable force against the pro LGBTQ protesters. This response included striking peaceful protester and observers with metal batons, firing beanbags as well as 37mm and 40 mm projectiles against peaceful protesters and observers at an unsafe distance.

20.    Plaintiffs are informed and believe and thereon allege that the LAPD's actions towards Plaintiffs and others violated the terms of the injunction issued in the *BLM* case in the following manner:

      A. Firing 37 mm and/or 40 mm projectiles at an unsafe distance within 5 fees.

      B. Firing 37 mm and/or 40 mm projectiles without giving proper warnings

      C. Firing 37 mm and/or 40 mm projectiles at persons who were not violent or threatening

      D. Firing 37 mm and/or 40 mm projectiles at the head, neck, face, eyes, kidneys, chest, groin and/or spines of protesters.

      E. Using 37 mm as target specific munition instead of for general crowd control.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

F.  Firing 37 mm and/or 40 mm projectiles without proper command approval.

21.    In addition to the LAPD's use of projectiles against peaceful protesters in violation of the injunction, LAPD officers also violated the rights of Plaintiffs and others by using other forms of excessive force including baton blows against non-violent persons.

22.    As a direct result of the unlawful actions of Defendants, Plaintiffs have suffered and continue to suffer harm, including pain and suffering, medical expenses, and severe physical injuries, some of which may be permanent in nature.

## IV.  THE LOS ANGELES POLICE DEPARTMENT'S CUSTOM, PATTERN AND PRACTICE OF VIOLATING THE RIGHTS OF PROTESTERS.

23.    Throughout the past decades, the LAPD has engaged in repeated, widespread violations of law, shutting down the exercise of First Amendment activities through the use of indiscriminate and unreasonable force against thousands of protestors. In conjunction with Defendants' long history of protest-related constitutional violations, Defendants' repeated widespread and unlawful acts against protesters within the past two years at various locations throughout the City constitute an unlawful custom, practice and/or policy of violating protest participants' constitutional rights. Based upon the principles set forth in *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978), Defendant City of Los Angeles is liable under 42 U.S.C. Section 1983 for all injuries sustained by Plaintiffs and others.

24.    LAPD chief Moore is the final policy maker for the LAPD and has been aware of and condoned and ratified he LAPD's unconstitutional actions towards protesters. Moreover, in his reports to the Police Commission and in other public statements, Moore stated that the actions of the LAPD were proper. Moreover, to the extent he did not make the decision and approve actions of the

**FIRST AMENDED COMPLAINT FOR DAMAGES**

LAPD at the Wi Spa, Chief Moore delegated responsibility and authority to persons within his command staff to act as the final policy maker in determining the response to the Wi Spa protests. The persons who made these decisions, acted as the delegated policy maker for the City of Los Angeles on these issues. There was no time, opportunity, or procedure for anyone to review or revise the decisions made by these delegated policy makers prior to their final implementation.

25.    As stated above, the City, through Chief Moore and the LAPD, has failed to train its officers in the appropriate constitutional responses to peaceful demonstrations. The City is well aware of its constitutional duties in these circumstances in light of the settlement agreements and consent judgments   in *National Lawyers Guild v. City of Los Angeles* and *MIWON v. City of Los Angeles*, as well as other settlements entered into specifying these constitutional duties over the years. The need for training and discipline to preserve constitutional guarantees in these circumstances is obvious. The City has known of the deficiencies in its training since at least 2000 and entered into settlement agreements in June 2005 and June 2009, each time agreeing to revised policies and training, yet the City has failed to promulgate adequate policies effectuating the terms of the settlement agreement and/or to train its command staff and officers on the revised policies, if any exist.

## A.    THE LOS ANGELES POLICE COMMISSION'S "INDEPENDENT EXAMINATION OF THE LOS ANGELES POLICE DEPARTMENT 2020 PROTEST RESPONSE"

26.    In response to the numerous concerns raised about the LAPD's response to the widespread protests in the wake of the George Floyd killing, the Los Angeles City Council directed the Los Angeles Police Commission to conduct an examination the LAPD's crowd control tactics in response to these protests and to issue a report of the commission's findings. The report, (also known as the Chaleff Report) included the following findings:

**FIRST AMENDED COMPLAINT FOR DAMAGES**

(27) There was a lack of training to properly prepare command officers for managing large crowds with the possibility of civil unrest and many command officers stated they did not feel confident in handling these incidents.

(35) It appears the majority of reported injuries that were sustained by persons in crowds were the result of less lethal munitions from the 40mm. Many who reported being injured claim that they were not involved in any violent or hostile acts.

(37) Limited viewing of video indicated that there were instances where officers quickly fired the 40mm rounds at distant targets which increases the likelihood of hitting the wrong target.

(38) The deployment of less lethal munitions was not always done at the direction of a supervisor or officer. In some instances, officers were directed to be in front of a skirmish line and left to deploy less lethal tools, including the 40 mm, with no direction or coordination.

(39) Over 7,800 personnel were trained (certified) to deploy the 40mm during a two-hour block of instruction at the ICDC course. However, the Review Team did not find the two hours of training to be sufficient given the skill level needed to deploy the 40mm in a chaotic public order policing environment.

(40) Officers are required to be trained one time on the 40mm system. Deploying the 40mm in public order policing situations requires recurring certification and training.

(41) The skill level required to deploy the 40mm in chaotic public order policing situations is high. Officers must be extremely competent and possess excellent marksmanship skills. It is unlikely that all officers trained possess the marksmanship skills

**FIRST AMENDED COMPLAINT FOR DAMAGES**

necessary to competently deploy the 40mm system under those circumstances.

(44) The Department's Use of Force Tactics directive authorizing the use of 40mm has no detailed guidance on use in public order policing situations.

(45) The 40mm can be an effective tool in a crowd control situation when utilized by officers who are well trained and experienced in its use.

(60) Most LAPD command staff have completed the basic incident command system training. However, the events of the summer of 2020 make it clear that additional training and mentoring in crowd control tactics and specific incident command system positions, such as incident commander, operations chief, logistics, etc. are needed and should be conducted on an annual basis.

(62) Training on the 40mm system use during crowd control situations was insufficient. . .

Chaleff Report at p. 60-62, 64 (cited in *Black Lives Matter v City of Los Angeles*, Dkt 101 at pp. 5-6)

**FIRST CLAIM FOR RELIEF – USE OF EXCESSIVE FORCE**

**(Fourth and Fourteenth Amendments to the U.S. Constitution:**

**42 U.S.C. § 1983 for damages)**

**(Against All Defendants)**

27.     Plaintiffs repeat and reallege each and every allegation in preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

28.     As alleged above, the LAPD officers, sued herein as Defendants Jenal and Does 2-10, used excessive force against Plaintiffs including but not the use of

**FIRST AMENDED COMPLAINT FOR DAMAGES**

metal batons, beanbags and 37 and/or 40 mm projectiles without justification. The individual Defendants' use of force, including the use of batons, bean bags, and rubber bullets and/or, other similar weapons, was both excessive and unreasonable under the circumstances. Defendants used unreasonable and excessive force in indiscriminately engaging in baton strikes and shooting rubber bullets at protestors, including Plaintiffs, not based on an individualized determination of individual conduct justifying such force, in violation of the Fourth Amendment. Defendants' use of excessive force deprived Plaintiffs, and each of them, of their rights under the Fourth and Fourteenth Amendments to be free from unreasonable searches and seizures.

29.    Further, Defendants' conduct was deliberately indifferent to Plaintiffs' rights, shocks the conscience, and violates the decencies of civilized conduct, under the Fourteenth Amendment.

30.    Plaintiffs are informed and believe and thereon allege that the acts of the individual LAPD officer Defendants were willful, malicious, intentional, reckless and/or were performed in willful and conscious disregard of Plaintiffs' rights, justifying the awarding of punitive and exemplary damages against the individual Defendants in an amount to be determined at the time of trial.

31.    As alleged herein, Defendant City of Los Angeles is liable pursuant to *Monell* because it maintained, condoned and/or permitted a policy, custom and/or practice of conscious disregard of and reckless indifference to Constitutional rights which was a moving force in the violation of Plaintiffs' rights and/or because its policy makers ratified the actions of its employees by finding that their actions were in conformity with the LAPD policy and by failing to discipline the involved officers and employees.

32.    On information and belief, Defendants Jenal and Does 2-10 were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with their use of excessive force against Plaintiffs or others.

**FIRST AMENDED COMPLAINT FOR DAMAGES**

33.    As alleged herein Defendant City failed to properly and adequately train its officers, including the individual Defendants, with regard to the proper use of force, including the use 37 mm and 40 mm projectiles, and with regard to how to respond to protesters.

34.    The training policies of Defendant City were not adequate to train its officers to handle the usual and recurring situations with which they must deal, including the use of less than lethal force, and the treatment of persons who are engaged in protests, journalism and other First Amendment activities. Defendant City was deliberately indifferent to the obvious consequences of its failure to train its officers adequately.

35.    The failure of Defendant City to provide adequate training caused the deprivation of Plaintiffs' rights by the individual LAPD officers; that is Defendants' failure to train is so closely related to the deprivation of Plaintiffs' rights as to be the moving force that caused the ultimate injury.

36.    As alleged herein, Defendant City, maintained, *inter alia*, unconstitutional customs, practices, and policies as set forth herein, including but not limited to:

a. Condoning the use excessive force against persons, including protesters and journalists;

b. Providing inadequate training regarding the use of force and how to respond to protesters, journalists and others engaged in lawful First Amendment activities;

c. Employing and retaining as police officers and other personnel, including Defendants Does 1-10, at all times material herein knew or reasonably should have known had dangerous propensities for abusing their authority and for mistreating citizens by using excessive force;

d. Inadequate supervising, training, controlling, assigning and disciplining LAPD officers, including Defendants Does 1-10;

**FIRST AMENDED COMPLAINT FOR DAMAGES**

e.  Failing to discipline LAPD officers, including Defendants Does 1-10, for the above referenced categories of misconduct including "slaps on wrists", discipline that is so slight as to be out of proportion to the magnitude of misconduct and other inadequate discipline which is tantamount to encouraging misconduct;

f.  Encouraging, accommodating, or facilitating a "blue code of silence," "blue shield," "blue curtain," or simple "code of silence," pursuant to which officers do not report other officer' errors, misconduct or crimes.

g.  Having and maintaining an unconstitutional practice of using excessive force and covering up police misconduct;

h.  Failing to properly train officers on the proper use of nonlethal force and to maintain their skills in the use of such equipment, including 37 mm and 40 mm projectiles.

37.  As a result of Defendants' wrongful conduct, Plaintiffs suffered damages as alleged above.

38.  Plaintiffs seek attorney fees under this claim pursuant to 42 U.S.C. Section 1988.

## SECOND CLAIM FOR RELIEF
## BANE ACT (Cal. Civ. Code § 52.1)
### (Against All Defendants)

39.  Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

40.  As alleged herein, Defendants intentionally interfered by threats, intimidation, and/or coercion with Plaintiffs' exercise and enjoyment of rights under federal and state law and under the federal and state constitutions (including, without limitation, Amendments 1 an 4 of the U.S. Constitution; California Civil Code Section 43 and Penal Code Sections 149, 240, and 242; and Article I, Sections

1, 2, 7, 13, and 17 of the California Constitution), including, without limitation, the right to be free from any violence, the right to bodily integrity, the right of protection from bodily restraint or harm and harm to personal relations, the right to adequate medical care, the right to be free from excessive force by police, the right to engage in protests, journalism and other rights of expression protected by the federal and state constitutions, the right be free from unreasonable searches and seizures and the right to due process. Defendants acted intentionally and with reckless disregard for the rights of Plaintiffs.

41.    As a direct and legal result of Defendants' acts and omissions, Plaintiffs, suffered damages and therefore seek all damages, including actual, compensatory and statutory damages, which are recoverable pursuant to Civil Code Section 52.1 and any other applicable statutes.

42.    Plaintiffs are informed and believe and thereon allege that the aforementioned acts of the individual Defendants, and each of them, were willful, malicious, intentional, oppressive and despicable and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages against the individual (non-government entity) defendants in an amount to be determined at time of trial.

43.    Plaintiffs seek an award of reasonable attorneys' fees pursuant to Civil Code Section 52.1.

<u>**THIRD CLAIM FOR RELIEF**</u>

<u>**BATTERY**</u>

**(Against All Defendants)**

44.    Plaintiffs repeat and reallege each and every allegation in in the preceding paragraphs, of this Complaint with the same force and effect as if fully set forth herein.

45.    LAPD officers, including Defendants Jenal and Does 2-10, while acting within the course and scope of their employment and duties, intentionally

**FIRST AMENDED COMPLAINT FOR DAMAGES**

used excessive force against Plaintiffs, including baton strikes, and/or 37 and/or 40 mm projectiles.

46.    Defendants Jenal and Does 2-10 who committed battery against Plaintiffs are liable to Plaintiffs pursuant to Government Code Section 820. Moreover, Defendant County is liable to Plaintiffs pursuant to Government Code Section 815.2, among other provisions of law, for the acts of its employees in committing battery against Plaintiffs.

47.    Plaintiffs are informed and believe and thereon allege that the aforementioned acts of the individual Defendants, and each of them, were willful, malicious, intentional, oppressive and despicable and/or were done in willful and conscious disregard of the rights, welfare and safety of Plaintiffs, thereby justifying the awarding of punitive and exemplary damages against the individual (non-government entity) Defendants in an amount to be determined at time of trial.

## **FOURTH CLAIM FOR RELIEF**
## **NEGLIGENCE**
### **(Against All Defendants)**

48.    Plaintiffs repeat and reallege each and every allegation in the preceding paragraphs of this Complaint with the same force and effect as if fully set forth herein.

49.    Defendants owed a duty of care to Plaintiffs, and were required to use reasonable diligence to ensure that Plaintiffs were not harmed by Defendants' acts or omissions. Defendants' actions and omissions were negligent and reckless, including but not limited to:

    a. Defendants' failure to properly assess the need to use force, including 37 mm and/or 40 mm projectiles against Plaintiffs;

    b. Defendants' failure to prevent the use of unreasonable force;

    c. Defendants' negligent tactics related to the use of force, and negligent handling of the Wi Spa protests, including conduct that falls below the

**FIRST AMENDED COMPLAINT FOR DAMAGES**

professional standard of care for peace officer interactions with protesters and journalists;

d. Defendants' negligent and/or unreasonable uses of force, including bean bags, batons and projectiles, against Plaintiffs;

e. Defendants' failure to provide and/or summon immediate medical care for Plaintiffs;

f. The failure of supervisory employees of the LAPD, including Chief Moore, to properly train, supervise and discipline employees, including Defendants Jenal and/or Does 2-10, regarding the use of force and the response to protests, including the use of 37 and 40 mm projectiles;

g. The negligent hiring, retention and assignment of LAPD officers, including the employees involved in this incident, by supervisory employees of Defendant City.

50. The Defendants whose negligent acts and omissions were a proximate cause of Plaintiffs' injuries are liable pursuant to Government Code Section 820 among other statutes. Moreover, Defendant City is liable pursuant to Government Code Section 815.2, among other statutes, for the negligent acts and omissions of its employees, which were a direct and proximate cause of Plaintiffs' damages.

51. Further, Defendant City is also vicariously liable for the acts and omissions of its supervisory employees based on their negligent failure to properly train and supervise the employees involved in this incident as alleged herein pursuant to Government Code Section 815.2 and other statutes.

## V. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs request entry of judgment in their favor and against Defendants as follows:

a. For compensatory damages, under federal and state law (including all damages and penalties available pursuant to Civil Code Section 52.1),

1    reasonable costs of suit, and interest, in an amount to be determined at
2    trial;
3    b.  For punitive damages against the individual (non-government entity)
4        Defendants in an amount to be proven at trial;
5    c.  For attorneys' fees including attorneys' fees pursuant to 42 U.S.C.
6        Section 1988 for the federal constitutional claims under 42 U.S.C.
7        Section 1983, Civil Code Section 52.1 for the Bane Act claim; and
8        Code of Civil Procedure Section 1021.5 for the other state law claims;
9        and
10   d.  For such further relief as the Court may deem just, proper, and
11       appropriate.
12
13   Dated: July 7, 2022                 **SCHONBRUN SEPLOW HARRIS**
14                                       **HOFFMAN & ZELDES, LLP**
15                           By:    _/s/ Michael Seplow_
16                                  Paul Hoffman
17                                  Michael Seplow
                                    John Washington
18                                  *Attorneys for Plaintiffs.*
19   Dated: July 7, 2022                 **LAW OFFICES OF HUMBERTO**
20                                       **GUIZAR, APC**
21
22                           By:    _/s/ Humberto M. Guizar_
23                                  Humberto M. Guizar, Esq.
                                    Christian Contreras, Esq.
24                                  *Attorneys for Plaintiffs.*
25
26
27
28

19
**FIRST AMENDED COMPLAINT FOR DAMAGES**

1

## DEMAND FOR JURY TRIAL

Plaintiffs hereby make a demand for a jury trial in this action.

Dated: July 7, 2022                    **SCHONBRUN SEPLOW HARRIS HOFFMAN & ZELDES, LLP**

By:    */s/ Michael Seplow*
Paul Hoffman
Michael Seplow
John Washington
*Attorneys for Plaintiffs.*

Dated: July 7, 2022                    **LAW OFFICES OF HUMBERTO GUIZAR, APC**

By:    */s/ Humberto M. Guizar*
Humberto M. Guizar, Esq.
Christian Contreras, Esq.
*Attorneys for Plaintiffs.*

**FIRST AMENDED COMPLAINT FOR DAMAGES**