Name  Muna Busailah (SBN 166328)

Address  1055 E Colorado Boulevard, Suite 320

City, State, Zip  Pasadena, CA 91106

Phone  (626) 683-5600

Fax  (626) 683-5656

E-Mail  d.danial@police-defense.com

☐ FPD   ☐ Appointed   ☐ CJA   ☐ Pro Per   ☒ Retained

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| JESSICA WOODWARD, et al, | CASE NUMBER: |
|---|---|
| PLAINTIFF(S), | CV 22-1306-GW-JEMx |
| v. | |
| CITY OF LOS ANGELES, et al. | **NOTICE OF APPEAL** |
| DEFENDANT(S). | |

NOTICE IS HEREBY GIVEN that _____ JOHN JENAL _____ hereby appeals to

*Name of Appellant*

the United States Court of Appeals for the Ninth Circuit from:

**Criminal Matter**

☐ Conviction only [F.R.Cr.P. 32(j)(1)(A)]
☐ Conviction and Sentence
☐ Sentence Only (18 U.S.C. 3742)
☐ Pursuant to F.R.Cr.P. 32(j)(2)
☐ Interlocutory Appeals
☐ Sentence imposed:

☐ Bail status:

**Civil Matter**

☒ Order (specify):
  Denial of Qualified Immunity

☐ Judgment (specify):

☐ Other (specify):

Imposed or Filed on _____ 01/25/2024 _____. Entered on the docket in this action on 01/25/2024 _____.

A copy of said judgment or order is attached hereto.

_____ February 14, 2024 _____    /s/ Muna Busailah

Date    Signature
        ☐ Appellant/ProSe   ☒ Counsel for Appellant   ☐ Deputy Clerk

**Note:**  The Notice of Appeal shall contain the names of all parties to the judgment or order and the names and addresses of the attorneys for each party. Also, if not electronically filed in a criminal case, the Clerk shall be furnished a sufficient number of copies of the Notice of Appeal to permit prompt compliance with the service requirements of FRAP 3(d).

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-1306-GW-JEMx | Date | January 24, 2024 |
|---|---|---|---|
| Title | *Jessica Woodward, et al. v. City of Los Angeles, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

**PROCEEDINGS:** **IN CHAMBERS - TENTATIVE RULING ON DEFENDANT JOHN JENAL'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES [70]**

Attached hereto is the Court's Tentative Ruling on Defendant's [70] set for hearing on January 24, 2024 at 8:30 a.m.

| | : | |
|---|---|---|
| | Initials of Preparer | JG |

***Woodward, et al. v. City of L.A., et al.,*** Case No. 2:22-cv-01306-GW-(JEMx)
Tentative Ruling on Motion for Summary Judgment or Summary Adjudication of Issues

## I.      BACKGROUND

On February 25, 2022, Jessica Woodward ("Woodward"), Scott Taylor, Erik Boyd, and Vishal Singh ("Plaintiff") sued the City of Los Angeles in – from the perspective of federal law – this action brought pursuant to 42 U.S.C. § 1983 ("Section 1983"). *See* Complaint, Docket No. 1. The operative complaint in the case is the Second Amended Complaint for Damages ("SAC"), filed January 9, 2023, which added Vinny Smith as a plaintiff, and John Jenal ("Jenal") and Jeffrey Lewis – both allegedly Los Angeles Police Department ("LAPD") Officers, *see* SAC ¶¶ 11-12 – as defendants. *See* Docket No. 47. The SAC contains four claims for relief: 1) a Section 1983 claim for use of excessive force pursuant to the Fourth and Fourteenth Amendments to the United States Constitution; 2) a claim pursuant to California Civil Code § 52.1, otherwise referenced as the "Bane Act"; 3) a claim for battery; and 4) a claim for negligence.

Jenal now moves for summary judgment with respect to all of Plaintiff's claims. As to Plaintiff's Section 1983 claim, Jenal argues that Plaintiff's claim for excessive force must fail because Jenal's use of force, under the circumstances presented to him, was reasonable.[1] In addition, Jenal asserts that he is entitled to qualified immunity with respect to that question because the law was not clearly established that the specific force he used in the specific circumstances presented violated the Fourth Amendment.

Jenal presents the same "reasonableness of force" arguments with respect to Plaintiff's state-law claims, along with some additional arguments. For Plaintiff's Bane Act claim, Jenal argues not only that the force was unquestionably reasonable, but that Plaintiff has no facts demonstrating a specific intent to violate Plaintiff's rights, and no facts of any threatening, intimidating, or coercive act independent from the alleged Fourth Amendment excessive force/violation itself. For Plaintiff's battery claim, Jenal

---

[1] Jenal also argues that the claim must fail to the extent Plaintiff has attempted to pursue it under the Fourteenth Amendment, as opposed to the Fourth Amendment, a point which Plaintiff effectively concedes. *See* Docket No. 85, at 7 n.4; *see also Graham v. Connor*, 490 U.S. 386, 388 (1989); *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024 (9th Cir. 2015).

relies entirely on the asserted reasonableness of the force he applied, because such a determination would conclusively resolve a California battery claim as well. He offers the same argument with respect to Plaintiff's negligence claim because in the absence of an excessive use of force, he would have breached no duty owed to Plaintiff.

As discussed below, the Court will deny Jenal's motion.

## II. ANALYSIS

### A. <u>Summary Judgment Standard</u>

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Miranda v. City of Cornelius*, 429 F.3d 858, 860 n.1 (9th Cir. 2005). To satisfy its burden at summary judgment, a moving party *without* the burden of persuasion "must either produce evidence negating an essential element of the nonmoving party's claim or defense or show that the nonmoving party does not have enough evidence of an essential element to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000) (emphasis added); *see also Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (*en banc*) ("When the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'") (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), and citing *Fairbank v. Wunderman Cato Johnson*, 212 F.3d 528, 532 (9th Cir. 2000)); *Fairbank*, 212 F.3d at 532 (holding that the *Celotex* "showing" can be made by "pointing out through argument . . . the absence of evidence to support plaintiff's claim").

> If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact, the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment[, but instead] must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial.

*T.W. Elec. Serv., Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987) (internal citations and quotation marks omitted). The opposing party must "cit[e] to particular parts of materials in the record" or show that the materials the moving party cited do not establish the absence or presence of a genuine dispute. Fed. R. Civ. P.

56(c)(1); *see also* Fed. R. Civ. P. 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials in the record.").

"Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must then determine whether "a reasonable jury could return a verdict for the nonmoving party." *Id.*; *see also Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient.").

Generally-speaking, in judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence, and views all evidence and draws all inferences in the light most favorable to the non-moving party, Plaintiff here. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Motley v. Parks*, 432 F.3d 1072, 1075 n.1 (9th Cir. 2005) (*en banc*); *Miranda*, 429 F.3d at 860 n.1. Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See National Steel Corp v. Golden Eagle Ins. Co.*, 121 F.3d 496, 502 (9th Cir. 1997); *Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir.1979). Factual assertions made in legal memoranda, but not supported by the evidence submitted, are insufficient. *See S.A. Empresa De Viacao Aerea Rio Grandense v. Walter Kidde & Co.*, 690 F.2d 1235, 1238 (9th Cir. 1980).

### B. Evidentiary Objections[2]

1. Defendant John Jenal's Request for Evidentiary Ruling on Specified Objections in Support of Defendant's Motion for Summary Judgment (Docket No. 97)

1. Overrule (objection to the entirety is overbroad);

2. Sustain as to "threatening" in ¶ 11, "threatened" in ¶ 20, and "in a manner that

---

[2] Evidentiary objections that do not comply with the Court's Standing Order re Summary Judgment Motions, *see* Docket No. 78, at 2:11-19, will be ignored.

I believe is consistent with my First Amendment rights" in ¶ 21.  Otherwise overrule.

### C. <u>Potentially Relevant Factual Background</u>[3]

On or about July 3, 2021, two separate groups of demonstrators protested outside of Wi Spa.  *See* Defendant John Jenal's Response to Plaintiff's Statement of Genuine Disputes ("SSGD"), Docket No. 96, ¶ 1.  That protest erupted in violence.  *See id.* ¶ 2.

A second protest near the Wi Spa occurred on July 17, 2021 (*i.e.*, in the middle of the COVID-19 pandemic, which may relate to certain clothing choices, referenced *infra*), involving the same two groups of protestors.  *See id.* ¶ 3; Defendant John Jenal's Response Statement of Additional Material Facts ("DRAF"), Docket No. 95, ¶ 45.  The protestors were located on opposite sides of the street.  *See* SSGD ¶ 7.

Jenal's unit was directed to a specific area to prevent a violent clash between the two groups of protestors.  *See id.* ¶ 5.  His unit was informed that the two groups were either starting or trying to converge and run toward each other in this area.  *See id.* ¶ 6.

Upon Jenal's deployment to the area in question, he encountered Plaintiff.  *See id.* ¶ 8.  Plaintiff was using an iPhone 11 camera to film the protests and the LAPD response that day, acting as a photojournalist.  *See* DRAF ¶¶ 47, 64.  Plaintiff (wearing a protective bicycle helmet, goggles, a face mask and – around his neck – a rectangular press pass from the US Press Corps, approximately 5 x 7 inches in size, with his photograph and the word "Journalist") was attempting to follow two other photojournalists crossing the street in the direction of one of the protesting groups when Jenal stopped him.  *See* SSGD ¶¶ 9-10; DRAF ¶¶ 45-46, 48.  Plaintiff was approximately five foot seven inches tall and 100 pounds, whereas Jenal was approximately six foot three inches tall and approximately 195 pounds.  *See* DRAF ¶¶ 51-52; *see also* Exhibits[4] 7-8.

---

[3] This section is built from undisputed facts (any truly – and material – disputed facts will be discussed, if necessary, in the body of the Court's analysis, *infra*).  Where a "dispute" actually disputes only *part* of a proffered undisputed fact, the portion that is not disputed is considered undisputed.  The same result occurs where a "dispute" makes assertions about an issue that is different from the one covered by the proffered undisputed fact.  Legal conclusions are not accepted as undisputed facts.  To the extent the *only* response to a proffered fact is an evidentiary objection that is not mirrored in a separate document as required by Docket No. 78, *see supra*, Footnote 2, the proffered fact will be considered undisputed unless the evidence cited in support of the proffered fact does not support the proffered fact.

[4] References to "Exhibits" herein are to the video exhibits the two sides have submitted along with Docket Numbers 73 and 86.

Jenal had his 36-inch wooden baton with him. *See* SSGD ¶ 4; DRAF ¶ 53. Officers may use a baton as a "push" (for instance, against a passive-aggressive person who is not responding to verbal commands) and as an impact device/weapon in response to a violent or threatening person. *See* SSGD ¶ 15; DRAF ¶¶ 69, 73-74, 79. When using the baton as an impact device, LAPD officers are trained generally to use one strike to stop threatening or violent behavior. *See* SSGD ¶ 16.

Jenal directed Plaintiff to get back on the sidewalk. *See id.* ¶¶ 11-12; DRAF ¶ 48. Plaintiff asked Jenal if Jenal was serious or kidding. *See* SSGD ¶ 13; DRAF ¶ 49. Jenal told Plaintiff that he was serious and directed Plaintiff to return to the sidewalk. *See* DRAF ¶ 49. Jenal leaned into Plaintiff and used his baton to guide Plaintiff backward toward the sidewalk. *See* SSGD ¶¶ 14, 18. Once at the curb, Jenal continued to direct Plaintiff to get on the sidewalk. *See id.* ¶ 19.

At that point in time, other protestors, including Woodward, ran toward Jenal and Plaintiff and became involved. *See id.* ¶ 20. Woodward and other protestors approached Jenal. *See id.* ¶¶ 21-22. Woodward and Jenal made contact with each other. *See id.* ¶ 22.[5] Jenal used his baton to block Woodward and to push Woodward away. *See id.* ¶¶ 23-24.

Woodward, Plaintiff, and the other individuals were continuously ordered to "get on the sidewalk" and to "back off," with at least some of them failing to comply. *See id.* ¶¶ 25-26. Woodward and the other individuals screamed obscenities at Jenal, including to "take . . . your fucking hands off [Plaintiff]." *See id.* ¶ 27.

During the course of this interaction, at least one person made physical contact with Jenal's baton. *See id.* ¶ 32. Jenal *felt* the protestors attempting to pull his baton away from him. *See id.* ¶ 33. Jenal exclaimed "do not touch me." *See id.* ¶ 34. Plaintiff was within a few feet of Jenal (off to Jenal's left, as demonstrated by the video exhibits), filming his actions. *See* DRAF ¶ 54; *see also* Exhibit 6; Exhibit 12.

As this was occurring, Jenal was constantly assessing his surroundings, observing and scanning the conduct and behavior of everyone within a six-foot radius. *See* SSGD ¶

---

[5] It is only at roughly this point in time that the video evidence Plaintiff provided begins. *See* Docket No. 86 (attaching flash drive containing four exhibits, three of which reflect varying views of the force employed). Several of the videos Jenal has provided (*see* Docket No. 73) begin several seconds earlier, as Jenal first approaches Plaintiff in the middle of the street.

35.  In doing so, Jenal witnessed Plaintiff's right arm raised and outstretched.  *See id.* ¶ 36.  Jenal reports that he saw that Plaintiff's right hand contained an object, but that he did not know what the object was.  *See id.* ¶ 39.  Plaintiff in fact had his camera phone in his right hand, recording the events.  *See* DRAF ¶ 54.

Plaintiff himself did not act violently and did not throw any objects at anyone. *See id.* ¶ 62.  He himself never attacked Jenal or any other person.  *See id.* ¶ 63.

As Jenal saw Plaintiff's right hand come up, Jenal – without warning (at least about any impending/imminent/potential use of force) – used a two-handed overhand strike, with "strong force," against Plaintiff.  *See* SSGD ¶ 40; DRAF ¶¶ 54-55, 65.  This occurred at 11:08:36 a.m.  *See* DRAF ¶ 68.  The LAPD has stated in a promotional video that an unlawful assembly was declared at 11:09 a.m.  *See id.* ¶ 67.

The baton blow caused Plaintiff to drop his phone, with the screen shattering.  *See id.* ¶¶ 58-59.  Plaintiff suffered bruising and a fracture in a bone in his right hand as a result of the baton-strike, along with feeling extreme pain.  *See id.* ¶¶ 56-57.  He sought medical treatment that day, with his right hand placed in a splint and sling, which he wore for over a month.  *See id.* ¶ 60.

The use-of-force considerations for an LAPD officer responding to crowd-control situations are the same as considerations when an LAPD officer is in the field:  only reasonable force can be used.  *See id.* ¶ 71.  This reasonable-force consideration applies with respect to the use of a baton – which can cause broken bones, and which can be considered a deadly weapon as defined in Penal Code Section 22210 – as an impact weapon.  *See id.* ¶¶ 77-78.

According to the LAPD's own written policy, "When an individual is threatening or violent in nature, a baton may be used as an impact weapon."  *See id.* ¶ 79.  However, in a directive to LAPD personnel dated October 1, 2020, LAPD personnel were notified that Use of Force Tactics Directive 8.2 dated August 2018, which appeared to authorize the use of a baton as an impact weapon when either a crowd or individual is threatening, was rescinded.  *See id.* ¶ 80.  The October 1, 2020 directive stated:  "It is important for Officers to understand that the use of a baton as an impact device against an individual must be in response to the threatening or violent behavior of *that* individual."  *See id.*

(emphasis added).[6]  Jenal was aware that this was the policy at the time of the events underlying this action, and had been informed that the prior directive had been rescinded. *See id.* ¶¶ 81-82.  Furthermore, under LAPD policy, a baton strike cannot be used simply because a person fails to comply with a police order or directive, including failing to disperse.  *See id.* ¶ 72.  In addition, according to LAPD policy, a warning should be given prior to using a baton strike, if feasible.  *See id.* ¶ 86.

Sergeant Robert Quiroz, designated by the LAPD as the person most knowledgeable per Rule 30(b)(6) of the Federal Rules of Civil Procedure, testified that officers are trained to only use a baton strike in response to an immediate threat to the safety of officers or others.  *See id.* ¶ 84.  Captain Scot Williams, also designated pursuant to Rule 30(b)(6), testified that "the baton can only be used in a striking fashion against someone who's violently resisting or who poses an immediate threat of violence to the officer or another person." *See id.* ¶ 85.

Beyond the LAPD's own policies, POST training regarding an impact weapon states:

> Every peace officer must understand that an impact weapon (i.e. baton) should be used only when an officer is acting in a reasonable manner or to repel and protect in certain tactical considerations
> and . . .
>
> A peace officer's impact weapon is a deadly weapon as defined in Penal Code Section 22210.  In law enforcement, however, to be used in an authorized manner, it must be used reasonably to repel or protect.
> and . . .
>
> Any officer who uses an impact weapon against a subject beyond objectively reasonable (i.e., Graham v. Connor) force can be criminally liable under the following statutes.
> and . . .
> Penal Code 149:  Any officer unnecessarily assaulting or beating any person under color of authority.
> and . . .

---

[6] Consistent with this, the LAPD Use of Force Tactics Directive No 11.2, Crowd Management, Intervention and Control (dated April 2021) states, in part, that "[t]he use of a baton as an impact device against an individual must be in response to the threatening or violent behavior of *that* individual."  *See* DRAF ¶ 83 (emphasis added).

Penal Code 245: Assault with a deadly weapon or force likely to produce great bodily injury.

*See id.* ¶ 75. Further, officers are taught that, among other obvious injuries, blows to the body by the baton can cause deep bruising and clotting that can eventually reach the heart and/or lungs and cause stroke and/or death. *See id.* ¶ 76. In the matrix of subject behaviors, the use of any object to a hand is justified only as a response to aggressive or combative acts. *See id.* ¶ 76.

Plaintiff has also presented the opinion of a "Police Practices expert" that Jenal's conduct in using his baton to strike Plaintiff on his hand falls below the standard of care for a reasonably-trained police officer and that it also violates LAPD's written policies and POST training. *See id.* ¶ 89.

**D. <u>Assessing the Arguments</u>**

     1. <u>Section 1983 Claim</u>

As noted above, Jenal has argued both that this Court may conclude both that the force he employed against Plaintiff was objectively reasonable as a matter of law and that, in any event, he is entitled to qualified immunity. The Court cannot agree with either contention here when it views the facts in the light most-favorable to Plaintiff, as it must in the present motion for summary judgment context.

When a court is presented with arguments that an action both did not violate the Constitution and that, even if there is a basis for concluding that it did violate the Constitution, the defendant is entitled to qualified immunity, it may choose to address those contentions in any order it determines appropriate. *See Plumhoff v. Rickard*, 572 U.S. 765, 773-74 (2014); *Tolan v. Cotton*, 572 U.S. 650, 656 (2014). Crucially, whichever of these questions they address, "courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment." *Tolan*, 572 U.S. at 656; *see also Martinez v. Stanford*, 323 F.3d 1178, 1184 (9th Cir. 2003); *Hopkins v. Bonvicino*, 573 F.3d 752, 776 (9th Cir. 2009); *Blankenhorn v. City of Orange*, 485 F.3d 463, 471 (9th Cir. 2007) ("Defendants are entitled to [qualified immunity] only if the facts alleged and evidence submitted, resolved in [Plaintiffs'] favor and viewed in the light most favorable to [them], show that their conduct did not violate a federal right; or, if it did, the scope of that right was not clearly established at the time."); *Davis v. City of Las Vegas*, 478 F.3d

1048, 1051, 1055 (9th Cir. 2007); *LaLonde v. County of Riverside*, 204 F.3d 947, 963 (9th Cir. 2000) (Trott, J., concurring & dissenting).  Thus, as is true with respect to any summary judgment-opponent, the facts in this case must be viewed in Plaintiff's favor.

a.  Objective Reasonableness

Excessive force claims are, in most situations (as here), analyzed under the Fourth Amendment.  *See A.K.H. by and through Landeros v. City of Tustin*, 837 F.3d 1005, 1010 (9th Cir. 2016).  "The Fourth Amendment permits law enforcement to use 'objectively reasonable' force."  *S.B. v. Cty. of San Diego*, 864 F.3d 1010, 1013 (9th Cir. 2017) (quoting *Graham v. Connor*, 490 U.S. 386, 396-97 (1989)).  Under the standard for assessing excessive force, the question is whether it was objectively reasonable that some use of force was required in light of the facts and circumstances confronting the officer. *See Tennessee v. Garner*, 471 U.S. 1, 7-8 (1985); *Graham*, 490 U.S. at 396-97; *Robinson v. Solano Cty.*, 278 F.3d 1007, 1013-14 (9th Cir. 2002); *see also Cty. of L.A. v. Mendez*, 581 U.S. 420, 427 (2017) ("Our case law sets forth a settled and exclusive framework for analyzing whether the force used in making a seizure complies with the Fourth Amendment. . . .  The operative question in excessive force cases is 'whether the totality of the circumstances justifie[s] a particular sort of search or seizure.'") (quoting *Garner*, 471 U.S. at 8-9).  "Determining whether the force used to effect a particular seizure is 'reasonable' under the Fourth Amendment requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake."  *Graham*, 490 U.S. at 396; *see also Davis*, 478 F.3d at 1054; *Smith v. City of Hemet*, 394 F.3d 689, 701 (9th Cir. 2005).

"Determining whether a seizure is unreasonable because the force used was excessive 'requires careful attention to the facts and the circumstances of each particular case,' including the consideration of the factors set forth in *Graham*:  the 'severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'"[7]  *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1024-25 (9th Cir. 2015)

---

[7] In 2015 and 2021, the Supreme Court issued decisions with a different description of relevant factors, looking to "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the

(quoting *Graham*, 490 U.S. at 396); *Blankenhorn*, 485 F.3d at 477. Of course, the quantum of force employed is also taken into consideration, as are alternative methods of subduing a suspect, including less intrusive force. *See Vos v. City of Newport Beach*, 892 F.3d 1024, 1033 (9th Cir. 2018) ("Although officers are not required to use the least intrusive degree of force available, 'the availability of alternative methods of capturing or subduing a suspect may be a factor to consider.'") (quoting *Smith*, 394 F.3d at 70); *Estate of Lopez v. Gelhaus*, 871 F.3d 998, 1006 (9th Cir. 2017); *Davis*, 478 F.3d at 1054; *id.* at 1055 ("[T]he factors articulated in *Graham*, and other factors bearing on the reasonableness of a particular application of force are not to be considered in a vacuum but only in relation to the amount of force used to effect a particular seizure.") (internal quotation omitted). Courts may also consider "whether proper warnings were given." *Vos*, 892 F.3d at 1033; *see also Estate of Lopez*, 871 F.3d at 1006. "The most important factor . . . is whether [the individual in question] posed an immediate threat to the safety of officers or others." *Vos*, 892 F.3d at 1031-32; *see also Estate of Lopez*, 871 F.3d at 1005; *S.B.*, 864 F.3d at 1013. "[T]here must be objective factors to justify such a concern." *Vos*, 892 F.3d at 1032.

"'The reasonableness of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Kisela v. Hughes*, 584 U.S. _, 138 S.Ct. 1148, 1152 (2018) (quoting *Graham*, 490 U.S. at 396). Thus, the only facts that matter are those that are known to law enforcement at the time they employ force. *See White v. Pauly*, 580 U.S. 73, 76-77 (2017); *Velazquez*, 793 F.3d at 1026 ("[U]nder *Graham*, an excessive force analysis takes into account, among other considerations, the facts known to the police at the time of the arrest with respect to the alleged offense that triggered the arrest."); *cf. Hernandez v.*

---

severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Lombardo v. City of St. Louis, Mo.*, 141 S.Ct. 2239, 2241 (2021); *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015); *see also, e.g., Estate of Nunis by & through Nunis v. City of Chula Vista*, _ F.Supp.3d _, No. 21-cv-01627-AJB-DEB, 2023 WL 3940563, *4 (S.D. Cal. June 9, 2023). Obviously, this description overlaps and/or duplicates the description of the factors recognized in *Graham*. The Ninth Circuit continues – after at least *Kingsley* – to cite the *Graham* factors, *see Nehad v. Browder*, 929 F.3d 1125, 1132 (9th Cir. 2019), though it has also referenced the more-recent enunciation, *see Demarest v. City of Vallejo, Cal.*, 44 F.4th 1209, 1225 (9th Cir. 2022). The parties make no reference to the factors as expressed in *Lombardo* or *Kingsley*. As such, the Court will not engage in any sustained examination/discussion of them here.

*Mesa*, 582 U.S. 548, 554 (2017) ("It is undisputed, however, that Hernandez's nationality and the extent of his ties to the United States were unknown to Mesa at the time of the shooting. The en banc Court of Appeals therefore erred in granting qualified immunity based on those facts."); *id.* ("Facts an officer learns after the incident ends – whether those facts would support granting immunity or denying it – are not relevant.").

"In addition, the court's consideration of 'reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 (9th Cir. 2001); *see also Graham*, 490 U.S. at 396-97; *see also Kisela*, 138 S.Ct. at 1152. "The Fourth Amendment standard is reasonableness, and it is reasonable for police to move quickly if delay 'would gravely endanger their lives or the lives of others.'" *City & Cty. of S.F., Cal. v. Sheehan*, 575 U.S. 600, 612 (2015) ("*Sheehan*").

"'[T]here are no per se rules in the Fourth Amendment excessive force context'; rather, courts 'must still slosh [their] way through the factbound morass of reasonableness.'" *Velazquez*, 793 F.3d at 1024 (quoting *Mattos v. Agarano*, 661 F.3d 433, 441 (9th Cir. 2011) (*en banc*)). "Because questions of reasonableness are not well-suited to precise legal determination, the propriety of a particular use of force is generally an issue for the jury." *Chew v. Gates*, 27 F.3d 1432, 1440 (9th Cir. 1994); *see also Estate of Lopez*, 871 F.3d at 1006 ("We have held that 'summary judgment should be granted sparingly in excessive force cases.'") (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 795 (9th Cir. 2014) (*en banc*)); *Cameron v. Craig*, 713 F.3d 1012, 1021 (9th Cir. 2013) ("'[W]hen the disputed facts and inferences are treated in the manner required by law,' that is, construed in [the plaintiff's] favor, 'a jury could properly find that the force used [was] greater than was reasonable under the circumstances.'") (quoting *Tekle v. United States*, 511 F.3d 839, 846 (9th Cir. 2007)); *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) ("We have often observed that '[b]ecause such balancing nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom…summary judgment or judgment as a matter of law in excessive force cases should be granted sparingly.'"); *Howell v. Polk*, 532 F.3d 1025, 1027 (9th Cir. 2008) ("[I]n excessive force lawsuits, the jury is usually charged with deciding whether the

force used by police in effecting an arrest was reasonable."); *Drummond v. City of Anaheim*, 343 F.3d 1052, 1056 (9th Cir. 2003) ("[W]e have held on many occasions that summary judgment or judgment as a matter of law in excessive forces should be granted sparingly . . . because police misconduct cases almost always turn on a jury's credibility determinations.") (quoting *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002)); *Liston v. County of Riverside*, 120 F.3d 965, 976 n.10 (9th Cir. 1997) ("We have held repeatedly that the reasonableness of force used is ordinarily a question of fact for the jury.").  But the Ninth Circuit has also "held that although reasonableness is normally a jury question, 'defendants can still win on summary judgment if the district court concludes after resolving all facts in favor of the plaintiff, that the officer's use of force was objectively reasonable under the circumstances.'"  *Alexander v. Cty. of L.A.*, 64 F.3d 1315, 1322 (9th Cir. 1995) (quoting *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir. 1994)).

Considering the foregoing principles, there is no need for an extended discussion here.  There is no suggestion that Plaintiff had committed a crime, and he was not resisting or attempting to evade an arrest, or to flee.  The only *Graham* factor in play is whether Plaintiff posed an immediate threat to the safety of Jenal, his fellow officers or others.  But on that most-important factor, *see, e.g.*, *Vos*, 892 F.3d at 1031-32, the facts construed in the favor of Plaintiff and as they *might* reasonably be construed by a factfinder, could call into question the reasonableness of Jenal's baton-strike – a use of "intermediate" force, *see Young v. Cty. of L.A.*, 655 F.3d 1156, 1161 (9th Cir. 2011) –  to Plaintiff's hand/wrist.

Preliminarily, it is unquestionably true – as the video exhibits reveal – that the situation here was relatively chaotic and fast-evolving, and that Jenal was faced with a number of actors in close quarters.  It is also true, as noted, that officers are often required to make split-second judgments, which are not to be reviewed as if they were made in the calm academic setting of the aftermath.  However, this is summary judgment, and we do not yet know how a factfinder will resolve crucial factual questions.

To be clear, the Court has reviewed the video evidence the parties have submitted in connection with, and in opposition to, Jenal's motion.  *See* Docket No. 73 (lodging flash drive with four video exhibits, one from perspective of Jenal, one from perspective of Plaintiff's phone, and two from other unknown bystanders); Docket No. 86 (lodging

flash drive with four video exhibits, three of which reflect Jenal's use of force). The Court does not believe that this evidence can be viewed to reach a single undeniable conclusion on the key questions in-play here, in contrast with other decisions on this topic such as the seminal (on the topic of video evidence) *Scott v. Harris*, 550 U.S. 372, 380-81 (2007). Certain observations may be made in that regard.

First, the videos Plaintiff has submitted start immediately before, or at, the physical interaction between Jenal, other officers, and the group of protestors with whom they are engaged. In those videos, we see none of the earlier interactions between Jenal and Plaintiff. In the video exhibits Jenal has submitted, however, we see Jenal approaching and interacting with Plaintiff for at least 10 seconds as he encounters him in the street and directs him back to the curb/sidewalk, before nearby protestors get involved in the interaction. *See* Exhibit 6; *see also* Declaration of Vishal Singh in Support of Plaintiff's Opposition to Defendant John Jenal's Motion for Summary Judgment, Docket No. 85-4, ¶¶ 7-9. Once at the curb/sidewalk, Plaintiff's hand, and the phone in it, are front-and-center from the perspective of Jenal's body-worn camera. *See id.*

Second, two of the videos Plaintiff has submitted appear to reflect Plaintiff beginning to *back away* from Jenal at the time Jenal strikes him with the baton. *See* Exhibits 12, 14. Moreover, from Exhibit 12, a factfinder might determine that Jenal was looking directly at Plaintiff and/or his phone/hand at the time he struck Plaintiff (a perspective supported by the body-worn camera Jenal has submitted, *see* Exhibit 6). From both of those facts – if a factfinder reaches those determinations – a factfinder might conclude that Jenal should not or could not have concluded that Plaintiff himself was in any way a threat to Jenal (or anyone else). Finally, to the extent that it is relevant to Jenal's use of force, the video evidence reveals that Plaintiff is clearly located *on* the sidewalk/curb at the time Jenal strikes him.

A major question here will be whether Jenal's belief that Plaintiff posed a threat was a reasonable one. If it was a reasonable belief, a factfinder could easily conclude – both under LAPD policy and general objective considerations bearing upon reasonableness – that Jenal's use of force, in the form of a single baton-strike to the hand/wrist, was reasonable.

Key to that determination is whether Jenal should have known that Plaintiff was

acting as a photojournalist, rather than a protestor/combatant. Key to *that* determination is whether he had seen, or could or did see, that Plaintiff was wearing a press pass and whether he had seen, or could or did see, that the object in Plaintiff's hand was a phone. There is sufficient evidence in the record that a factfinder could reach alternative conclusions on those facts.

Jenal's assertion that he "had no way of knowing [that the object in Plaintiff's hand was a phone] *during* this succinct, abrupt incident," Docket No. 70, at 17 n.5, will be an issue for a factfinder to decide whether to accept or reject, especially considering Jenal's prior interaction with Plaintiff. As an initial note, as mentioned earlier, a factfinder could conclude that Jenal was looking directly at Plaintiff and/or Plaintiff's hand at the time Jenal employed the baton. Certainly, there is video evidence that reveals Jenal had more-than-sufficient opportunity to recognize what Plaintiff was doing, and what he had in his hand, when he first encountered him, and that also reveals that the baton-strike occurred only shortly thereafter (though, of course, chaos multiplied in the interim, and a factfinder could determine that Jenal was understandably distracted and unable to make coldly-rational determinations). When Jenal first encountered Plaintiff, one could conclude that he had no reason to be focused on anything other than Plaintiff himself (along with what Plaintiff was wearing and holding).

These matters may be key to a determination as to whether Jenal should reasonably have understood Plaintiff as a threat or not. Resolved in Plaintiff's favor, a factfinder could easily then determine that Jenal's use of force with the baton-strike[8] was unreasonable.

This is a realistic possibility especially considering that there is no evidence that *Plaintiff himself* made any contact with Jenal. Moreover, the LAPD has policies in effect, which Jenal knew about, which dictate that the use of a baton as an impact device against an individual must be in response to the threatening or violent behavior of *that* individual. *See* DRAF ¶ 80-82.

---

[8] Plaintiff concedes that Jenal's use of the baton to push or direct Plaintiff prior to the baton strike is not the basis for his claim here, *see* Docket No. 85, at 9 n.5, making Jenal's arguments about the relative minimal level of force in such an action unnecessary for the Court to consider here. Jenal recognizes that his baton strike against Plaintiff "is different in nature, of course," Docket No. 70, at 11:10-11, though he still argues that this use of force was reasonable under the circumstances.

Jenal argues that such policies are irrelevant to a question of the reasonableness of force. He relies on a Seventh Circuit decision, which states that such evidence is "immaterial," *see Thompson v. City of Chicago*, 472 F.3d 444, 453-55 (7th Cir. 2006), and a Ninth Circuit decision, *Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009), which indicates that violation of department regulations does not "establish" a constitutional violation. *See, e.g.*, Docket No. 94, at 7 n.3. This Court does not disagree with that Ninth Circuit determination, but believes – in the absence of any Supreme Court or Ninth Circuit decision to the contrary – that police policies may be at least *relevant to* the question of reasonableness of force, and *considered* by a factfinder in making a reasonableness determination. Indeed, Plaintiff responds by citing Ninth Circuit case law establishing that very point. *See Drummond*, 343 F.3d at 1062 ("Anaheim's training materials are relevant not only to whether the force employed in this case was objectively reasonable, . . . but also to whether reasonable officers would have been on *notice* that the force employed was objectively unreasonable."); *see also Young*, 655 F.3d at 1168 n.9; *Nelson v. City of Davis*, 685 F.3d 867, 885 n.6 (9th Cir. 2012). Jenal addresses none of those cases in his Reply brief. If the Seventh Circuit's *Thompson* decision is to be understood to the contrary, this Court will not follow that decision.[9]

Jenal relies upon a handful of cases in an attempt to demonstrate that the Court should conclude, at the summary judgment stage, that his use of force against Plaintiff was reasonable. However, in *Felarca v. Birgenau*, 891 F.3d 809 (9th Cir. 2018), video showed that the individual who suffered the overhand baton-strike had pushed and kicked at two officers and grabbed the officers' batons, among other things (as Jenal concedes, *see* Docket No. 70, at 12:22-24). *See Felarca*, 891 F.3d at 818-19. In *Sorgen v. City & Cty. of S.F.*, No. C 05-03172 THE, 2006 WL 2583683 (N.D. Cal. Sept. 7, 2006), meanwhile, there was probable cause to arrest the intoxicated plaintiff who was attempting to interfere with or challenge the officer's arrest of the plaintiff's friend. *See id.* at *1-2, 6-7. Plaintiff points out that *Bruister v. Asuncion*, No. CV1705106-PSG-

---

[9] The Ninth Circuit does not appear to have ever adopted, or cited with approval, *Thompson*'s conclusion in this respect. Only one district court within this Circuit has done so, in an unpublished decision considering whether to admit the opinion of an expert who sought to *favorably* compare the officers' actions to California law enforcement standards. *See Rios v. City of L.A.*, No. 2:21-cv-05341-RGK-MAA, 2022 WL 17219085, *2 (C.D. Cal. July 26, 2022).

RAO, 2020 WL 6385682 (C.D. Cal. Oct. 26, 2020), was an Eighth Amendment analysis of force employed against a California prisoner. *See id.* at *4, 8-9. The only way cases such as *Felarca*, *Sorgen* and *Bruister* could stand, conclusively, for the proposition that Jenal's application of force upon Plaintiff's wrist/hand was reasonable (or, alternatively, to muddy the waters sufficiently so as to protect Jenal under a qualified immunity analysis, discussed *infra*) would be if the Court could resolve the facts, at summary judgment, in *Jenal's* favor, not Plaintiff's. That is not what happens at this stage of a lawsuit.

The Court concludes that there is indeed a role for a factfinder with respect to the question of the objective reasonableness of Jenal's application of force to Plaintiff.[10] Jenal may not prevail on Plaintiff's Section 1983 claim on this basis.

b. Qualified Immunity

Even where there is a triable issue suitable for a jury on the question of whether force applied was objectively reasonable, the doctrine of qualified immunity may prevent a Section 1983 case against an individual defendant from proceeding. "'Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Kisela*, 138 S.Ct. at 1152. A qualified immunity inquiry asks two questions: (1) was there a violation of a constitutional right, and, if so, then (2) was the right at issue 'clearly established' such that it would have been clear to a reasonable officer that his conduct was unlawful in that situation? *See Saucier v. Katz*, 533 U.S. 194, 201-02 (2001), *overruled on other grounds by Pearson v. Callahan*, 239 S.Ct. 808 (2009). The Court has already addressed the first of those questions, concluding that there is a triable issue on that question.

"A clearly established right is one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)); *see also Motley*, 432 F.3d at 1077 ("Finally, even if the violated right was clearly established,

---

[10] Because of a factfinder's proper role with respect to the foregoing issues, the Court has no need to wade into the waters – at least at this stage – on the question of whether or not Jenal should or should not have given an explicit warning about an impending use of force before conducting the baton-strike. *Vos*, 892 F.3d at 1033; *see also Estate of Lopez*, 871 F.3d at 1006.

. . . it may be difficult for a police officer fully to appreciate how the legal constraints apply to the specific situation he or she faces.  Under such a circumstance, '[i]f the officer's mistake as to what the law requires is reasonable, . . . the officer is entitled to the immunity defense.") (quoting *Saucier*, 533 U.S. at 205); *Sjurset v. Button*, 810 F.3d 609, 616 (9th Cir. 2015).  *But see Morales v. Fry*, 873 F.3d 817, 824-25 (9th Cir. 2017) (characterizing, as "explicitly repudiated by the Supreme Court," the Ninth Circuit's prior "qualified immunity method of analysis evoking 'double reasonableness'").  As a result, as it is frequently-phrased, this "immunity protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *White*, 580 U.S. at 79 (quoting *Mullenix*, 577 U.S. at 12); *see also Sheehan*, 575 U.S. at 611.

Somewhat-critically, the Supreme Court has – especially in recent years – "'repeatedly told courts – and the Ninth Circuit in particular – not to define clearly established law at a high level of generality.'"  *Kisela*, 138 S.Ct. at 1152 (quoting *Sheehan*, 575 U.S. at 613); *see also White*, 580 U.S. at 79 ("Today, it is again necessary to reiterate the longstanding principle that 'clearly established law' should not be defined 'at a high level of generality.'") (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)); *Mullenix*, 577 U.S. at 12; *Sheehan*, 575 U.S. at 613 ("Qualified immunity is no immunity at all if 'clearly established' law can simply be defined as the right to be free from unreasonable searches and seizures."); *Dist. of Columbia v. Wesby*, 583 U.S. 48, 63-64 (2018).  Instead, "the clearly established law must be 'particularized' to the facts of the case."  *White*, 580 U.S. at 79.

It is true that "'specificity is especially important in the Fourth Amendment context.'"  *Kisela*, 138 S.Ct. at 1152 (quoting *Mullenix*, 577 U.S. at 12).  "Use of excessive force is an area of the law 'in which the result depends very much on the facts of each case,' and thus police officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue."  *Id.* at 1153 (quoting *Mullenix*, 577 U.S. at 13).  "Precedent involving similar facts can help move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful."  *Id.* (quoting *Mullenix*, 577 U.S. at 18).  With this in mind, "the general rules set forth in '*Garner* and *Graham* do not by themselves create clearly established law outside an obvious case.'"  *Id.* (quoting *White*,

580 U.S. at 80).

But in defining this right, a court must not forget to resolve the facts in the light most favorable to the non-moving party. *See Tolan*, 572 U.S. at 657 ("Our qualified-immunity cases illustrate the importance of drawing inferences in favor of the nonmovant, even when, as here, a court decides only the clearly-established prong of the standard. . . . [C]ourts must take care not to define a case's 'context' in a manner that imports genuinely disputed factual propositions."). In addition, it is of course not necessary that there be a prior case with *identical* facts showing that a right is clearly established. *See Flores v. Morgan Hill Unified Sch. Dist.*, 324 F.3d 1130, 1136-37 (9th Cir. 2003) ("In order to find that the law was clearly established…we need not find a prior case with identical, or even 'materially similar,' facts. Our task is to determine whether the preexisting law provided the defendants with 'fair warning' that their conduct was unlawful."); *cf. Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) ("[I]n an obvious case, these [Fourth Amendment excessive force] standards can 'clearly establish' the answer, even without a body of relevant case law.").

The incident in question here occurred on July 17, 2021, so the question is what was clearly established in the law as of that time. *See Kisela*, 138 S.Ct. at 1152 ("'Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct.'") (quoting *Brosseau*, 543 U.S. at 198). Prior to that time, the Ninth Circuit had made clear numerous times that the use of non-trivial force against non-threatening, law-abiding individuals – Plaintiff's characteristics, if the facts are viewed in his favor – is impermissible. *See, e.g.*, *Rice v. Morehouse*, 989 F.3d 1112, 1126 (9th Cir. 2021) ("Because the plaintiff did not make any threats or resist the officer, under our case law, 'the use of non-trivial force *of any kind* was unreasonable.'"); *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1093 (9th Cir. 2013) ("The right to be free from the application of non-trivial force for engaging in mere passive resistance was clearly established prior to 2008."); *Young*, 655 F.3d at 1168 ("The principle that it is unreasonable to use significant force against a suspect who was suspected of a minor crime, *posed no apparent threat to officer safety*, and could be found *not to have resisted arrest*, was thus well-established in 2001, years before the events at issue in this case.") (emphasis added);

*see also Bernal v. Sacramento Cty. Sheriff's Dep't*, 73 F.4th 678, 698-99 (9th Cir. 2023) ("William was an unarmed, non-suspect witness who posed no physical threat to the Deputies or others. 'The proposition that police may not inflict pain on non-suspects . . . in the absence of any law enforcement reason, should be so obvious to reasonable officers that qualified immunity cannot shield them.'") (quoting *Tekle*, 511 F.3d at 860 (Kleinfeld, J., concurring)).

Although there are factual differences between decisions such as *Rice*, *Gravelet-Blondin*, *Young* and this case, those differences do not matter in the key "specific factor" at issue here: the use of non-trivial force against a non-threatening, non-resistant, individual. *See Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 947 (9th Cir. 2017) ("In typical cases, the plaintiff 'identif[ies] a case where an officer acting under similar circumstances as [the defendant] was held to have violated the Fourth Amendment.' In the absence of 'a case directly on point, we compare 'specific factors' relevant to the excessive force inquiry to determine whether a reasonable officer would have known that the conduct in question was unlawful.'") (quoting *S.B.*, 864 F.3d at 1015-16 and *Bryan v. MacPherson*, 630 F.3d 805, 826 (9th Cir. 2010)). Factual differences in cases where force is employed against a non-resistant, non-threatening individual are potentially as numerous as the stars in the sky. If the Court must have a situation "on *all* factual fours" before it is able to conclude that such an individual has had his or her clearly-established rights violated, woe be to us all. Jenal certainly has not directed the Court to any decision that stands for the proposition that a "posed no threat" type of situation must exist in the exact same factual setting in a prior case in order for the specificity/generality qualified immunity rule to be satisfied (though, certainly, if a factfinder were to determine that Jenal *could* reasonably have concluded that Plaintiff posed a threat, that specificity rule would seem to have much more "bite" to it in this case).

Jenal also would not be able to rely upon cases finding use-of-force acceptable where officers had *earlier* seen/heard about the individual in question unquestionably in possession of a weapon before being less sure at the time force is applied. *See, e.g.*, *Vos*, 892 F.3d at 1035 ("Here, officers confronted a reportedly erratic individual that took refuge in a 7-Eleven, cut someone with scissors, asked officers to shoot him, simulated having a firearm, and ultimately charged at officers with something in his upraised hand.

The relevant inquiry is whether existing precedent placed the conclusion that officers acted unreasonably in these circumstances 'beyond debate.'") (quoting *Mullenix*, 577 U.S. at 13-14); *Reese v. Cty. of Sacramento*, 888 F.3d 1030, 1039 (9th Cir. 2018) ("Critically, Reese points to no case that considered the relevant question whether Deputy Rose, having come within striking distance of a suspect who had held a knife a fraction of a second before, was objectively unreasonable in using deadly force before determining whether the suspect still possessed the knife."). Had *that* been the situation here, the Court would almost certainly have to conclude that Jenal was *at least* entitled to qualified immunity. In fact, however, here there is evidence suggesting that Jenal should have known (or did know), based upon his initial interactions with Plaintiff, that Plaintiff was a photojournalist who had his phone in his hand attempting to record events, and that Jenal had sufficient time to recognize Plaintiff in this regard before Jenal struck him with the baton.

Again, with the facts viewed/resolved in Plaintiff's favor, Jenal arguably would/should have known that it was Plaintiff that he was about to strike with his baton and that Plaintiff was not a threat at all, but merely a photojournalist attempting to record the events occurring. Use of a baton to strike him, if that is how the facts are viewed, would have been unreasonable under the law as it existed on July 17, 2021. Jenal is therefore not entitled to qualified immunity (at least at this time).

In sum, because the Court cannot agree with Jenal that the force he employed may, under the circumstances, be conclusively deemed reasonable, or that, with the facts construed in Plaintiff's favor, Jenal would be in any event entitled to qualified immunity, his motion is denied to the extent it is directed at Plaintiff's Section 1983 claim.

2. Bane Act

Section 52.1 of California's Civil Code provides, in part, that any person who "interferes by threat, intimidation, or coercion . . . with the exercise or enjoyment by any individual . . . of rights secured by the Constitution or laws of the United States" may be sued in a civil action for damages. *See* Cal. Civ. Code § 52.1(b), (c); *see also Sandoval v. Cty. of Sonoma*, 912 F.3d 509, 519 (9th Cir. 2018). With respect to Jenal's Bane Act arguments, Plaintiff contests Jenal's assertion that Plaintiff must prove a constitutional violation *separate from* the use of unreasonable force, relying on both *B.B. v. County of*

*Los Angeles*, 25 Cal.App.5th 115, 131-32 (2018), and *Reese* for that proposition.[11]  In truth, the question is somewhat-nuanced:  any coercion must be separate from that inherent in the act, at least where the plaintiff shows *only* that a defendant has *negligently* violated the constitutional rights in question.  *See Sandoval*, 912 F.3d at 519-20; *Reese*, 888 F.3d at 1043, 1044 n.5; *see also S.R. Nehad v. Browder*, 929 F.3d 1125, 1142 n. 15 (9th Cir. 2019) ("We have squarely rejected [the argument that the Bane Act requires threats or intimidation other than an underlying use of excessive force], as has the California Court of Appeal.").

For Bane Act liability, there must also be a showing of specific intent to violate the rights in question.  *See Reese*, 888 F.3d at 1044.  Yet, as to the question of "specific intent," Plaintiff argues that reckless disregard can satisfy the standard.  He is correct. "'[A] reckless disregard for a person's constitutional rights is evidence of a specific intent to deprive that person of those rights.'"  *Reese*, 888 F.3d at 1045 (quoting *United States v. Reese*, 2 F.3d 870, 885 (9th Cir. 1993)); *see also S.R. Nehad*, 929 F.3d at 1142 n.15; *Sandoval*, 912 F.3d at 520.

Plaintiff simply believes that he can satisfy that standard given the evidence that he was merely trying to film the events as a photojournalist and because Jenal was aware of the rules prohibiting baton strikes against a non-violent or non-threatening person, and (in Plaintiff's view of the evidence) was simply angry at Plaintiff for having questioned his command that Plaintiff retreat to the sidewalk/curb.  The Court believes this is a much-closer question, on summary judgment, than simply the question of whether Jenal's actual force employed was reasonable or excessive in Fourth Amendment terms.  There is no question that Jenal was confronted with a somewhat-chaotic situation involving multiple individuals in close contact with him.  Nonetheless, it believes that there is enough here to believe that this too is a decision that must be made by a factfinder.

Those facts both potentially make the "independent coercion" requirement inapplicable here (because they potentially demonstrate something more than negligence)

---

[11] Even if there was such a requirement, because Plaintiff was acting as a photojournalist, he asserts that Jenal's use of force interfered with his First Amendment rights.  Jenal's response that Plaintiff raises no free-standing First Amendment claim is beside the point; if Plaintiff must indeed point to *interference* with the enjoyment of a Constitutional right that is independent from the alleged excessive force itself, Jenal has not directed the Court to any authority that such a plaintiff must also simultaneously present an independent cause of action for violation of that right.

and get Plaintiff past summary judgment on the question of intent. As a result, the Court does not see a basis to grant Jenal's motion with respect to Plaintiff's Bane Act claim.

### 3. Battery and Negligence

As for Jenal's arguments targeting Plaintiff's battery and negligence claims, Plaintiff rests entirely upon the survival of his Section 1983/Fourth Amendment claim. The Court has determined *supra* that the excessive force claim against Jenal survives summary judgment. As the only argument he raises with respect to Plaintiff's battery and negligence claims is tied to his hoped-for success on the excessive force claim, his motion will be denied as to Plaintiff's third and fourth claims as well. *See Hill v. City of Fountain Valley*, 70 F.4th 507, 519 (9th Cir. 2023) (noting that state-law battery claims "have similar requirements as an excessive force claim" and "must fall by the wayside as well" when excessive force claim lacks merit); *Monzon v. City of Murrieta*, 978 F.3d 1150, 1164-65 (9th Cir. 2020); *Hayes v. Cty. of San Diego*, 57 Cal.4th 622, 639 (2013) (confirming that "California negligence law [assesses] the reasonableness of a peace officer's conduct . . . in light of the totality of the circumstances"); *Bowoto v. Chevron Corp.*, 621 F.3d 1116, 1129 (9th Cir. 2010) ("Under California law, a plaintiff bringing a battery claim against a law enforcement official has the burden of proving the officer used unreasonable force."); *Edson v. City of Anaheim*, 63 Cal.App.4th 1269, 1272-75 (1998) ("[A] prima facie battery is not established unless and until plaintiff proves unreasonable force was used.").

### E. Conclusion

For the reasons addressed above, the Court will deny Jenal's motion in its entirety.

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 22-1306-GW-JEMx | Date | January 25, 2024 |
|---|---|---|---|
| Title | *Jessica Woodward, et al. v. City of Los Angeles, et al.* | | |

Present: The Honorable   GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | Terri A. Hourigan | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Michael D. Seplow | Muna Busailah |
| Christian M. Contreras | |

**PROCEEDINGS:** **DEFENDANT JOHN JENAL'S MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION OF ISSUES [70]; and DEFENDANT JOHN JENAL'S MOTION TO UNSEAL DOCUMENTS REGARDING DEFENDANT JOHN JENAL'S APPLICATION FOR LEAVE TO FILE CONFIDENTIAL RECORDS AND VIDEO RECORDINGS UNDER SEAL [80]**

The Court's Tentative Ruling was issued on Defendant's Motion [70] on January 24, 2024 [101]. Oral argument is held. The Court DENIES Defendant's Motion in its entirety.

Court and counsel confer as to Defendant's Motion to Unseal Documents [80]. For reasons stated on the record, Defendant's Motion is GRANTED regarding Docket No. 79 as to the videos.

Defendant Jeffrey Lewis's Motion for Summary Judgment [90], set for hearing on January 29, 2024, is continued to February 12, 2024 at 8:30 a.m. Reply is to be filed by February 1, 2024.

|  | : | 09 |
|---|---|---|
| Initials of Preparer | JG | |

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
### Form 6. Representation Statement

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form06instructions.pdf*

**Appellant(s)** *(List **each** party filing the appeal, do not use "et al." or other abbreviations.)*

Name(s) of party/parties:

JOHN JENAL

Name(s) of counsel (if any):

Muna Busailah

Address: 1055 E Colorado Boulevard, Suite 320, Pasadena, CA 91106

Telephone number(s): (626) 683-5600

Email(s): m.busailah@police-defense.com; d.danial@police-defense.com

Is counsel registered for Electronic Filing in the 9th Circuit?  ⊙ Yes  ○ No

**Appellee(s)** *(List only the names of parties and counsel who will oppose you on appeal. List separately represented parties separately.)*

Name(s) of party/parties:

Vishal Singh

Name(s) of counsel (if any):

Michael D. Seplow
John Washington

Address: 9415 Culver Blvd. #115 Culver City, CA 90232

Telephone number(s): (310) 396-0731

Email(s): mseplow@sshhzlaw.com; washington@sshhzlaw.com

*To list additional parties and/or counsel, use next page.*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                      *1*                      *New 12/01/2018*

Continued list of parties and counsel: *(attach additional pages as necessary)*

## **Appellants**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Is counsel registered for Electronic Filing in the 9th Circuit?    ○ Yes    ○ No

## **Appellees**

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

Name(s) of party/parties:

Name(s) of counsel (if any):

Address:

Telephone number(s):

Email(s):

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**Form 6**                    *2*                    *New 12/01/2018*