**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION**

**HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE**

VISHAL SINGH, et al,

               Plaintiffs,

    vs.                    Case No. 22-cv-1306

CITY OF LOS ANGELES, et al,

               Defendants.

_____/

**REPORTER'S TRANSCRIPT OF TRIAL PROCEEDINGS**
**TRIAL DAY 2**
**Wednesday, August 27, 2025**
**8:30 a.m.**
**LOS ANGELES, CALIFORNIA**

_____

**TERRI A. HOURIGAN, CSR NO. 3838, CCRR**
**FEDERAL OFFICIAL COURT REPORTER**
**350 WEST FIRST STREET, ROOM 4311**
**LOS ANGELES, CALIFORNIA  90012**
**(213) 894-2849**

**UNITED STATES DISTRICT COURT**

**APPEARANCES OF COUNSEL:**

**FOR THE PLAINTIFF:**

SCHONBRUN SEPLOW HARRIS HOFFMAN and ZELDES LLP
BY:  MICHAEL D. SEPLOW
     JOHN CLAY WASHINGTON
     Attorneys at Law
200 Pier Avneue, Suite 226
Hermosa Beach, California  90254

LAW OFFICES OF CHRISTIAN M. CONTRERAS
BY:  CHRISTIAN M. CONTRERAS
360 East 2nd Street, 8th Floor
Los Angeles, California  90012

LAW OFFICES OF HUMBERTO GUIZAR
BY:  HUMBERTO M. GUIZAR
     Attorney at Law
3500 W. Beverly Blvd.
Montebello, California  90640

**FOR THE DEFENDANT:  JOHN JENAL**

STONE BUSAILAH LLP
BY:  MUNA BUSAILAH
     MICHAEL WILLIAMSON
     Attorneys at Law
1055 East Colorado Boulevard, Suite 320
Pasadena, California  91106

**FOR THE DEFENDANT:**  CITY OF LOS ANGELES

BURKE WILLIAMS and SORENSEN LLP
BY:  BRIAN S. GINTER
     Attorney at Law
444 South Flower Street, 40th Floor
Los Angeles, California  90071

**UNITED STATES DISTRICT COURT**

**WITNESS INDEX**

**\* \* \***

**Witness:**                                                    **Page**

(No witnesses called.)

**UNITED STATES DISTRICT COURT**

**EXHIBIT INDEX**

**\* \* \***

**Exhibit No.**                                                                 **Page**


(No exhibits received.)

UNITED  STATES  DISTRICT  COURT

**LOS ANGELES, CALIFORNIA; WEDNESDAY, AUGUST 27, 2025**

**8:30 a.m.**

**--oOo--**

THE COURTROOM DEPUTY:  Please remain seated and come to order.  This United States District Court is now in session.  The Honorable George H. Wu, judge, presiding.

THE COURT:  All right.

Have you some good news for me?

MR. CONTRERAS:  Good morning, Your Honor, we did speak.

THE COURT:  Uh-huh.

MR. CONTRERAS:  I don't -- frankly, we need a little bit more time, I think on my side, at least, because another issue came up that kind of has been a distraction, but that I would like to raise to the Court.

THE COURT:  Which is?

MR. CONTRERAS:  Sure.  So we have a Proud Boy amongst the audience.  He's not here today, but it was a gentleman that was in a gray suit here.

THE COURT:  Uh-huh.

MR. CONTRERAS:  The defense may know him, because I think they were speaking with him a few times.

His name is what, again?

MR. WASHINGTON:  Thomas Morales, we have some

**UNITED STATES DISTRICT COURT**

footage --

MR. CONTRERAS:  Thomas Morales, is the gentleman's name.  He was here, and my client alerted me to it.

I didn't think it was an issue because, obviously, it's an open courthouse.

But the issue was, once we left yesterday, the gentleman essentially accosted us, yelling at us with his phone out, saying so many things to Mr. Singh.

Luckily, it didn't get violent, but that wasn't the end of it.

THE COURT:  Huh-uh.

MR. CONTRERAS:  Then this person started taking photographs of Mr. Singh during lunch, and then after court, and he posted it online saying, that he was going to lynch Mr. Singh.

The issue with this person is that he's a confirmed insurrectionist from January 6th.

He was literally inside the capital.

THE COURT:  The point of these statements to me, is as to what, I mean, what, you have some good news.  I thought you were going to say you settled the case.

Is this a reason that you settled the case, but for this particular incident, or is the situation where you are just talking about it before we started the trial again.

Do you want to address this issue?

MR. CONTRERAS:  Before we start the trial.

THE COURT:  In other words, you haven't settled the case?

MR. CONTRERAS:  We haven't settled the case, because this has been a distraction.

My client is petrified, essentially.

His partner was accosted.  She's scared.  She's a witness in this case, so we have witness intimidation here.

THE COURT:  Let me put it this way, if you feel that that has occurred, you know, you should report it to the -- Javier, the --

THE COURTROOM DEPUTY:  There are -- was a CSO sitting here.

THE COURT:  You should report it to the CSOs.  My clerk is telling me there was a CSO that was present during part of the trial.

THE COURTROOM DEPUTY:  Practically all day.

THE COURT:  Okay.  My clerk is telling me he was here practically all day.

So, if that is that sort of incident, you should report it to the CSOs.

They will take steps, either to stop it, or if it continues after warnings, to bar him from the courtroom and maybe bar him from the courthouse, until the matter is over.

Because, you know, the person should not be attempting

to intimidate participants in a lawsuit.

It's really simple.

So, again, the only thing I can say is that you should report it to the CSOs.

And, you know, they can take the appropriate steps.

MR. CONTRERAS:  Well, I think the issue here is I don't know the involvement of this person with the defense.

THE COURT:  Let me put it this way, hopefully you are not suggesting the defense has put up these people to do this type of stunt.

MR. CONTRERAS:  I said, I don't know.

That is why, at least, at the very least, it warrants an inquiry.

THE COURT:  If you don't know, you shouldn't make the assertion that they are somehow associated with the defendants.

MR. CONTRERAS:  No, he is associated with them.  He was speaking with him multiple times, such as the meet and confers.

THE COURT:  Who were they speaking to -- who was he speaking to, that individual?

MR. CONTRERAS:  All of them.

MR. WILLIAMSON:  I never spoke to anybody.  That is a false assertion.

MR. WASHINGTON:  I specifically saw him speaking

with Muna.  There was an incident.

THE COURT:  To whom?

MR. WASHINGTON:  Ms. Busailah.

THE COURT:  Okay.  You are getting everybody's names wrong in this case.

MR. SINGH:  It's on video and photographed.

MR. WASHINGTON:  I would like to show you what happened, we did record it.  And I think the concern is --

THE COURT:  Well, no.

If you have recorded it, what I will do is I will call somebody from the CSOs, and you can play it to them.

And again, as I have indicated, if in fact your client has been somehow -- there has been an attempt to intimidate your client within the courtroom or the courthouse, I will have the CSOs on alert, and if the guy comes back into the courthouse, I will have him contact my clerk.

And again, if this thing happens, in any way, shape, or form, I will have them barred from the courthouse during the pendency of the trial, because, I mean, you are absolutely right, this thing should not occur at all.

MR. WASHINGTON:  Your Honor, part of our concern is that Mr. Singh and his partner, who I was speaking with last night, have already been intimidated.

I'm happy to show Your Honor the photograph.  The man is associating with people who are showing pictures of Mr. Singh,

UNITED STATES DISTRICT COURT

surreptitiously recorded leaving the courthouse.

THE COURT:  Let's put it this way, if he has recorded something in the courthouse, you can't do that.

MR. WASHINGTON:  It's outside the courthouse.

What I'm saying is the context, it's clearly threatening.  His associates are posting pictures of Mr. Singh hung, face blue, bleeding out of his eyes.

MR. SINGH:  I do interpret that as a death threat, Your Honor.

THE COURT:  I'm not saying that you are wrong in this.

But let me just ask, you are telling me this, in other words, if it's a question of -- you know, providing some protection here in the courthouse et cetera, et cetera, that is something I can do.

Outside of that, I don't know what you expect me to do.

MR. WASHINGTON:  Part of the concern, Your Honor, I don't know if the witnesses can testify, it may be grounds for a mistrial.

I don't know that -- I also don't know the basis of this person's involvement.

I can say after the incident, one of the things this person was doing after accosting all of us and Mr. Singh, is basically saying, admit you are ANTIFA, and admit you are ANTIFA.

And then he proceeded to walk to Lieutenant Jenal and shake his hand.

MR. SINGH:  I have photographs of this, Your Honor.

THE COURT:  I think it's improper, and the concern is that the witnesses don't feel comfortable testifying.

Let me hear from the defense.

MR. WILLIAMSON:  The defense has no relationship with this man.

I don't even know who he is.

I have had no conversation.

THE COURT:  Why don't you show the video to the defense counsel.

MR. WILLIAMSON:  I do believe this man has been in the courtroom.

I wouldn't even recognize him, if I saw him, but there is no relationships, is my point.

He may have approached people to try to talk or shake hands.

It never involved me, and there is no relationship and there is no conspiracy here to intimidate witnesses, including Mr. Singh.

It's an absolute false assertion.

If Mr. Singh feels uncomfortable, maybe he needs to hire security for when he's outside.  The security can talk to the CSOs who are here, whatever.

But that is on him, this does not involve the defense. It's not a defense issue; it's not grounds for a mistrial.

MR. WASHINGTON:  Your Honor, to clarify the person who I specifically saw this man speaking with is Ms. Busailah before the incident, after the incident, shaking hands with the defendant, so the idea that there is no connection here, you may have none.

THE COURT:  Do you have a video of that?

MR. SEPLOW:  We have a picture of them all standing together.

I view this as an attack on us, Your Honor, and the attack on the administration of justice.

We are supposed to administer the justice here.

THE COURT:  Don't walk through the well.  Show it to defense counsel, and I will take a look at it.

MR. GUIZAR:  Counsel just said he has nothing to do with it.  I saw them altogether as well, Your Honor.

MR. WILLIAMSON:  Well, you didn't see me.

MR. GUIZAR:  That is defense counsel, right?

MR. WILLIAMSON:  That is some, yes.

Your point is?

MR. GUIZAR:  What do you mean, my point is.

MR. SINGH:  Moments after we were accosted outside.

THE COURT:  Let me stop.  Stop.

Let me see the item.

MR. WASHINGTON:  I have it on my phone.  I'm trying to figure a way to show it on the court system.

MR. GUIZAR:  You can go up and show him.

THE COURT:  Well, I do recognize that gentleman as being in the courtroom yesterday.

And he is apparently talking -- he appears to be talking to defense counsel and the defendant.  Although, I don't know what about.

You are right on that.

MR. WASHINGTON:  Do you want me to show a further video?

THE COURT:  Okay.  Show them first.

MR. SINGH:  I don't know where that image came from, but whoever posted that image, posted an image, or illustration of me being hanged to death.

He's an associate of Mr. Morales, who is here, there are many photographs together at various events.

They have edited videos together.

MR. GUIZAR:  I'm sorry for getting agitated, counsel but this is very disturbing to us.

MR. WILLIAMSON:  I'm sure it is.

MR. SINGH:  I apologize, as well.

MR. WILLIAMSON:  It is not an issue for the defense. It's an issue for the court security staff.

MR. GUIZAR:  Very well.

THE COURT:  Let me ask, are you making a formal motion to have a mistrial declared?

MR. WASHINGTON:  Yes, Your Honor.

THE COURT:  What is the response from the defense?

MR. WILLIAMSON:  It does not involve the defense. It's a court security matter.

The Court can do what -- to provide security for Mr. Singh, if need be, that is what the Marshal Service and CSOs are for.

There is no evidence that the defense has colluded with this man, caused any relationship with this man, or directed any activity toward Mr. Singh.

There is no basis for a mistrial.

MR. WASHINGTON:  I don't think that is accurate.

Within 20 seconds of this, the man proceeded to go shake hands with defendant.

He was speaking with defense counsel then.

He's speaking with defense counsel before.

And the defense counsel who was involved, has also not said anything, nor is the defendant shaking hands --

THE COURT:  The defense counsel indicated that the individual is not associated with the defense at all.

MR. WASHINGTON:  Then I'm not sure what the conversations were about, which hasn't been addressed, nor why they would shake hands with the defendant, asking questions

that would obviously help the defendant.

THE COURT:  I assume -- in other words, you are saying that the shaking hands took place after the video that I have just seen?

MR. WASHINGTON:  The video was taken, and then they proceeded to go shake hands with the defendant.

Prior to that, they were conversing in the courtroom. They continued to converse after the incident.

I'm still not hearing what happened with the defendants.

MR. WILLIAMSON:  Again, it's interesting, Mr. Singh's counsel, many times yesterday kept asserting how he has the right to say and do whatever he wants to do under the First Amendment.

But apparently this Proud Boy member can't freely associate and come up and shake hands or talk with somebody.

THE COURT:  No, let's put this in context.

First of all, I wouldn't say that this Proud Boy person, it didn't seem to me was making threats at that point in time.

What he seemed to be doing is asking questions about Mr. Singh, if he was a member of ANTIFA, but all we know, the parties are going to stipulate in this case, that he's not a member of ANTIFA.

MR. WASHINGTON:  The context is also important, Your Honor, which is, his associates -- the nature of the photographs I sent to you, obviously -- appear to me to be

UNITED STATES DISTRICT COURT

threatening, surreptitious photographs, a part from which, there is a photo of him being hanged to death.

THE COURT:  That is a caricature.  I'm not to make a determination at this point in time, to the extent to which the plaintiff should feel afraid, at this point in time, I have no context in which to make this.

I don't know the situation.  You know, you are claiming this person is a member of Proud Boys.

That, I mean, I understand that is your representation, I do not know that for a fact.

MR. WASHINGTON:  I can show photographs, I think the leader --

MR. SINGH:  The leader of the Proud Boys, Enrique Tarrio with Thomas Morales, the man who was in this courtroom.

MR. WASHINGTON:  Also, outside the capital.

MR. SINGH:  On January 6th, Your Honor, is the man who was in your courtroom.

THE COURT:  Again, I understand you have some knowledge of this, I do not have any knowledge of this.

I do not know whether or not these people are associated or not.

MR. SINGH:  Of course.

THE COURT:  Well, the real question is, I understand that your client is disturbed, but the question is, am I going to declare a mistrial on the basis of something that happened,

you know, first of all, outside the courthouse.

If it was something inside the courthouse, I would actually probably refer the matter to the U. S. Attorney's Office.

In that sense, to say that there was an attempt at intimidating a party in the litigation and also a witness in an ongoing trial.

But, it did not happen in the courtroom, it did not happen in the courthouse.

And so...

MR. WASHINGTON:  Your Honor, the concern is also witness intimidation.

I don't know whether Mr. Singh and his fiance at least are capable of testifying, at least, comfortably.

THE COURT:  But the problem is that are they going to be comfortable testifying at any point in time?

I don't understand, you know.  I don't understand the nature of this.

If I declare a mistrial in this particular matter, at what point in time am I supposed to start the retrial?

MR. WASHINGTON:  I think if we can make sure that this individual is not in the courtroom.

THE COURT:  Well, he's obviously not in the courtroom.

MR. WASHINGTON:  I think, Your Honor, if he were not

**UNITED STATES DISTRICT COURT**

being harassed in this way, he would be comfortable testifying, or if we could have some time to prepare him, but in the middle of the trial to have this thrown at him, it's very difficult to have a witness be speaking coherently, while being threatened with death.

In addition, to which, Your Honor --

THE COURT: Well, let me put it this way, my understanding is that he, himself, did not receive a death threat. What he did was he went on a site and saw the particular depiction that you have shown me.

MR. WASHINGTON: That's true.

THE COURT: So it wasn't directed to him, but it was something that was simply on a website that he's familiar with, so I don't know if there was a special intent to intimidate him in this particular matter.

MR. SINGH: May I say something, Your Honor?

This individual did post this on his own website, after he posted a picture of me and my partner, leaving to lunch yesterday.

He has sent this message to me in the past, this depiction of me, this illustration.

He has messaged it to me personally, previously.

But I believe it is significant that he has re-contextualized this prior death threat in this current circumstance, by reposting it and immediately reposting photos

UNITED STATES DISTRICT COURT

after leaving this courthouse for lunch.

I'm still not sure what the source of that photograph is, Your Honor.

THE COURT: Sorry, which photograph are you referring to, the photograph?

MR. SINGH: Of me and my partner leaving to go to lunch.

There were two incidents here where there are photographs of me.

One where I was accosted at the end of the day.

There was another incident where photos of me and my partner, leaving to lunch, after you dismissed us.

We went to the sandwich shop you recommended, and there are photos posted of us walking. And immediately after, he posted photos on his website, he then posted the illustration depicting me being hanged.

So I wanted to clarify here, Your Honor. Thank you.

MR. WASHINGTON: Your Honor, I have two points.

One of which is, I think if this were addressed then we could proceed, I understand -- I think what Your Honor is saying is if he were threatened again, how would we deal with it.

THE COURT: Well, no.

The real question is, is this individual going to attempt to come back into the courtroom.

Is this individual going to come back into the courthouse.

MR. WASHINGTON:  I think that is part of the concern, but the other concern is that he's being threatened, as is his fiance, and we have not -- I'm not --

THE COURT:  Something like that would be properly addressed to and reported to the police department.

MR. WASHINGTON:  Except that they are testifying in this case and they are not comfortable testifying.

It is difficult to put a witness on who has just been threatened with his life.

I think, Your Honor --

THE COURT:  Well, again, there has been a posting, is my understanding.  There has been a posting of a caricature of him being hung.

I understand that.

But again, this is something apparently that has happened before, and so I understand -- you know, I would refer to this -- I would characterize this as more of harassment, than an actual death threat.

MR. WASHINGTON:  I mean, I think one could certainly imagine that the messages are, he should die, being posted to his followers, who are a violent group of people, who have threatened his life.

And that's the concerning aspect.

THE COURT: But again, you know, separating the various matters at issue, there is a first issue as to whether or not I should declare a mistrial.

There is a second issue, as to, you know, what should be done in regards to this individual's prior conduct.

And then the third thing, what should be done insofar as the prospect of any future conduct.

The latter two, of which, you know, basically it seems to me is something that it has to do with law enforcement authorities.

I don't know what you expect me to do about that, other than contacting law enforcement officers or contacting the U.S. Attorney's Office.

But the problem is if the stuff was done not in the courtroom or the courthouse, but outside, then, you know, I don't know if it's something I can do anything about.

MR. WASHINGTON: Understood, Your Honor.

In the jurisdictional point effectively, but what the Court does have jurisdiction over is proceedings in the court.

I understand it happened outside the court, but what we have is witnesses who would be coming to the court intimidated.

That's the concern of having a fair trial here.

THE COURT: Let me hear a response from the defense.

MR. WILLIAMSON: Again, this is an issue, it's a security issue for the Court, for the Marshal Service, the

CSOs, the LAPD, if it happens out on the sidewalk.

If Mr. Singh is uncomfortable, he has the ability to hire private security.

THE COURT:  He has the ability to hire private security.

I don't know if you are being facetious when you are saying something of that sort.

MR. WILLIAMSON:  I'm not.

If a person feels their life is threatened by anybody outside this court where they have built-in protection, then hire security.

THE COURT:  Let me put it this way, I would put it in the most extreme way against your position, I would say that if in fact he feels threatened by somebody, who is a member of Proud Boys, that is an organization which has been known to encourage violence, and after he is confronted after testifying in his case, he thereafter sees that individual talking to defense counsel, and to the defendant, you are saying that he should hire private security because of that situation?

Is that what you are really saying to me?

MR. WILLIAMSON:  No, I'm not.

THE COURT:  You just did.

MR. WILLIAMSON:  I don't believe I did.

What I said is there's no evidence that the defense in any way participated in any collusion with this man that would

cause the plaintiff any fear.

THE COURT:  Do you want to explain what was said between that individual, and the defendant and your colleague?

What was said.

MR. WILLIAMSON:  I guess my colleague, and the defendant can speak.  I don't know.  I wasn't a party to any of it.

MR. BUSAILAH:  Your Honor, this individual came up to us, came up to me when we were outside and wanted to ask questions about the length of the trial, when plaintiff was going to be testifying, and things of that nature.

He claimed he had some information that he was associated with ANTIFA, and that was it.

He tried to show a video, he was dismissed out, and he came and talked to us again when we were out at the bottom of the stairs.

THE COURT:  All right.

MR. BUSAILAH:  Extension of the handshake was to move him on down the road, and the conversation.

MR. WASHINGTON:  What were you discussing in the courtroom with him?

MR. BUSAILAH:  I don't recall anything specific that was being discussed, but if there was anything discussed here, well, are we going to go tomorrow, what time will the testimony begin, things of that nature.

He's not associated with the defense team.

THE COURT:  I agree, that there is no indication he is associated with the defense team, but, you are seen talking to him.

You know, again, I had thought I placed an order on both the parties, counsel, and the jurors, they are not to talk about this case with anyone until the case is over.

And the fact you are talking to somebody, even somewhat of an innocent remark as to when the plaintiff is going to be testifying, again, I understand that is innocent, but the problem is that now in the context of who you were talking to at the time, and it seems highly problematic.

All right.  What else do you want to tell me?

MR. WASHINGTON:  I think that is the preliminary issue, Your Honor.

THE COURT:  Let me think about it, and I will let you know my response when I reach a response.

What else do you want to present to me?

MR. SEPLOW:  We wanted a few seconds to confer with our client.

THE COURT:  I will tell the jury we're going to start late, because I want to resolve this, obviously, before I bring the jury back in, okay.

MR. SINGH:  Thank you, Your Honor.

(Recess.)

**UNITED STATES DISTRICT COURT**

THE COURTROOM DEPUTY:  Please remain seated and come to order.

THE COURT:  All right.  Let me ask counsel, does either side have anything else they want to add as to this issue in regards to the individual who has been identified with being associated with the Proud Boys?

MR. CONTRERAS:  Not on behalf of plaintiff.

THE COURT:  For the defence?

MR. BUSAILAH:  Nothing additional, Your Honor.

I think he's coming in from the restroom.

THE COURT:  Okay.

This is my response to what I have been informed about in this particular incident.

First of all, I'm not going to declare a mistrial.

I can't find the basis for doing so at this point in time.

Let's put it this way, unless something happens during the course of while there is additional testimony from either the plaintiff or his fiance witness, then maybe I will reconsider the issue.

But at this point in time, I will not declare a mistrial.

I will offer the plaintiff and his persons associated to him, if they want to feel safer, I will have them escorted in and out of the courthouse by our CSOs.

UNITED STATES DISTRICT COURT

I will also indicate that I will inform the CSOs about this individual.

If the individual comes back into the courthouse during the period of time that the trial is ongoing, I will have him -- that person be escorted -- well, not escorted, followed by the CSO.

So wherever he goes in this the courthouse, they will be there making these observations.

I will also refer this matter to both the Marshal Service and also the U.S. Attorney's Office.

I will indicate in my -- I think there is sufficient evidence to look into this matter to see if there has been a violation of 18, U.S.C., Section 1512(a)(2), which is an attempt to intimidate either a party or a witness or to delay a proceeding.

And the U.S. Attorney and the Marshal Service will look into it, and make whatever determination they feel is appropriate.

But obviously, during this, the plaintiff and plaintiff's counsel have to provide them with all of the information which you provided me, so they can follow up on my reference to them.

So that is my response to this particular situation.

Let me ask one question, however, of the defense, nobody on the defense team had ever previously met or associated with

this individual, including the defendant?

MR. WILLIAMSON:  I will speak for myself.

THE COURT:  No, I want it to be -- I want you to talk with your colleagues.  I want one answer.

I'm not going to grill everybody.  I want to know whether or not any member of the defense team or the defendant, himself, has ever had any previous contact with this individual or I guess the Proud Boys, if it relates at all to anything that is involved in this case.

MR. WILLIAMSON:  The answer is no.  No contact with the Proud Boys.  No contact with this man.

THE COURT:  Okay.  Anything else anybody else wants to say about this matter?

MR. CONTRERAS:  Nothing about this matter, Your Honor.

THE COURT:  Okay.  Is there something else that is going to come up?

MR. CONTRERAS:  Not on this particular matter, Your Honor.

THE COURT:  Okay.  In other words, I can bring the jury in.

MR. CONTRERAS:  Well, I believe there is an offer on the table, so...

THE COURT:  There is what?

MR. CONTRERAS:  There is an offer on the table, I

believe, and plaintiff would like to accept.

I mean, if it's still on the table, and my client did want me to state something else.

MR. GINTER:  The offer remains on the table at this moment.

MR. CONTRERAS:  So my client accepts the offer.

He wanted me to say it's somewhat under duress.

THE COURT:  Let me stop you.

I'm not going to go there.

Let me put it this way, I presume both sides have been under duress from me, I have been trying to get you to settle.

I don't know if this last thing was a kicker or whatever.

I presume it was not.

I presume this is a knowledgeable settlement by both parties?

Is there something that we can put on the record at this point in time?  If we could put it on the record, I will just wait until you guys have -- in other words, you get all of the details down, I will put it on the record.

Once it's on the record, I will bring the jury in and I will excuse them.

MR. CONTRERAS:  Plaintiff could put it on the record.

MR. GINTER:  We could put it to the record, with all

settlements of this amount, which the attorneys know very well --

THE COURT:  This will include attorney's fees and all of that stuff?

Is this the settlement itself going to be under seal at all, or --

MR. GINTER:  It's not under seal, but what I do need to say is the offer is contingent on approval of a number of approving authorities within the City of Los Angeles, as are also settlements of this amount.

THE COURT:  Let me put it this way, I know that for certain settlements for certain amounts, which I don't think this amount would even approach, it goes all the way up, for example, to, you know, the higher levels.

I understand that.

I presume this settlement would not have to go that far?

MR. GINTER:  All amounts over $100,000 need to go to the City Council, Your Honor.

THE COURT:  Okay.

MR. GINTER:  What I can also say is that with prior experience of cases of this nature and this amount, I fully expect that the settlement will go through and be approved by all of the required authorities.

THE COURT:  I will rely on the good faith.  If worse comes to worse, I can reverse my decision and say I will

declare it a mistrial.

I will tell you what, are we ready to put all of the details on the record at this point in time?

MR. CONTRERAS:  Plaintiff is ready.

MR. GINTER:  I think so.  What might be most convenient for everyone is have our mediator circulate our standard stipulation.

THE COURT:  Is the mediator here with that information?

MR. GINTER:  He is not, but I know that he has the form.  He sends it to us very promptly every time we do the settlements.  It will be out immediately.

THE COURT:  Can he send that to my clerk now?

MR. GINTER:  I'm sure that he can.

THE COURT:  Why don't you ask him to email it to the clerk, and that would be fine.

MR. GINTER:  I do need to step outside and call him.

THE COURT:  Not a problem.  Let me know his response.

MR. GINTER:  I certainly will.

THE COURT:  Are they sending it over?

MR. GINTER:  I'm sorry for keeping everyone ready. I expect we could have the stipulation here in about 30 minutes.

If I can provide more detail in context, he's actually

driving right now out of the state, so he's going to arrive to where he can prepare the stipulation, and send it over just as soon as he can.

He just needs the case number from me.

THE COURT:  Let me ask you this:  I presume you guys are familiar with the general outlines.

I presume this was the same one you used in the -- for the other plaintiffs, right?  It's basically the same form, right?

MR. GINTER:  No.  The other plaintiffs we had a long form settlement agreement, that is standard.

But this stipulation for settlement is a standard form, Your Honor.

THE COURT:  I presume when it's standard it covers the same thing about all claims known and unknown, covers, you know, the agents blah, blah, blah, blah, blah, blah.  It states the dollar amount, states when it's going to be paid, you know, the contingency that, for example, has to be approved.  It seems to me these are standard items.

MR. GINTER:  These are standard terms and all of those things are included.

THE COURT:  So, you know what they are generally -- we will just put it on the record.

MR. GINTER:  We probably could.

THE COURT:  Okay.  Let's go ahead and do it.  Let's

UNITED STATES DISTRICT COURT

go back on the record.

All right.  Let me ask counsel, what are the terms of the settlement?

MR. GINTER:  Mr. Singh shall dismiss this lawsuit and all claims known or unknown against the City of Los Angeles and Lieutenant Jenal, arising out of the events that occurred on July 17th, of 2021.

Those are all known and unknown claims with the waiver of California Civil Code 1542.

The plaintiff shall be responsible for all liens relating to this matter.

The plaintiff shall indemnify the City and Lieutenant Jenal, if any claim related to a lien or any other matters is made arising out of the claims made by the plaintiff in this lawsuit.

The settlement is contingent on approval by the following bodies of the City of Los Angeles:

The City's Claims Board, the City's Budget and Finance Committee, and also the City Council of the City of Los Angeles.

Further, assuming there is approval, but the City Council -- the mayor has approximately ten days to review and decide whether to veto the approval by the City Council, and assuming that veto does not occur, the City will issue a check in the amount of $200,000, payable as directed by plaintiff's

counsel.

THE COURT:  That sum to be inclusive of any costs and attorney's fees, et cetera; in other words, that is the entire sum?

MR. GINTER:  Correct, Your Honor.

THE COURT:  And in the normal course, what is the time estimate?  Obviously, this is not binding, but what is the expectation of the parties insofar as how long it will take for the process to go through the Claims Board, City Council, the Mayor, et cetera?

How long is that, approximately?

MR. GINTER:  Six months, approximately.

THE COURT:  Six months, okay.  And also I presume that the defendants waive any counterclaims, et cetera, et cetera, that they possibly could have arising from this incident.

MR. GINTER:  Yes, Your Honor.  Arising from this incident, the claims made in this lawsuit.

THE COURT:  All right.  Let me ask the plaintiff's counsel, is there anything else in terms of the elements of the settlement?

MR. SEPLOW:  It seems fine.  I just want to make sure in terms of liens, I'm not aware of any indemnity the defendants -- if they became aware of a lien should at least contact plaintiff's counsel to give them the opportunity to pay

the lien before the defendants incur any fees on that.

THE COURT:  Yes.

MR. GINTER:  That's agreed.

THE COURT:  If there is a settlement, and once it's executed, obviously, I will retain jurisdiction over the case to enforce all of the terms and conditions of the settlement, and that if I find a violation of any condition of the settlement, I can remedy the violation, and also, I can award at my sole discretion, the attorney's fees for the costs of any further proceedings to enforce the terms of the settlement.

Is that acceptable to both sides?

MR. CONTRERAS:  Yes, Your Honor.

MR. GINTER:  It is, Your Honor.

THE COURT:  Also, my decision on any of those matters will be absolute.

It will not be subject to an appeal.

Is that agreed to by both sides?

MR. CONTRERAS:  Agreed.

MR. GINTER:  Yes, Your Honor.

THE COURT:  So everything is going to be put to bed?

MR. GINTER:  Yes, Your Honor.

THE COURT:  Okay.  Let me ask the defendant -- the plaintiff, you have heard the terms of the settlement.  Have you discussed it with your counsel?

MR. SINGH:  I have discussed it with my counsel,

yes.

THE COURT:  Are you going to be accepting that settlement?

MR. SINGH:  Yes, Your Honor.  I will be accepting it.

THE COURT:  Okay.  Let me ask plaintiff's counsel, plaintiff's counsel joins in the settlement?

MR. CONTRERAS:  Yes, joined, Your Honor.

THE COURT:  Let me ask the defendant, and I will mispronounce your name one last time, Mr. Jenal, was that even close?

MR. JENAL:  That is closer.

THE COURT:  How do you do it?

MR. JENAL:  Jenal, with a Y, yes, sir.

THE COURT:  Mr. Jenal, do you accept the settlement?

MR. JENAL:  Yes, sir.

THE COURT:  And defense counsel?

MR. WILLIAMSON:  Yes, Your Honor.

THE COURT:  For the city?

MR. GINTER:  Yes, Your Honor.

THE COURT:  Other than bringing back the jury and telling them that the matter has been settled, is there anything else I need to do?

MR. CONTRERAS:  No, Your Honor.

THE COURT:  I shall return the exhibits back to the

**UNITED STATES DISTRICT COURT**

respective parties, and if you guys want, I will tell the jury that, once I excuse them, I will make you guys available to them, if they don't mind talking to you.

Sometimes I do find it -- it might help the counsel to get feedback on the performance and things of that sort.

If you don't mind, if you want that, I will tell them that's what we would do.

MR. CONTRERAS:  Yes, we would like that.

MR. WILLIAMSON:  I would like that.

THE COURT:  Just between us, let me indicate to both the plaintiff and the defendant, I thought your testimony was pretty good, both of you guys, so I would have had to toss a coin.

All right.  Let me have the clerk bring back the jury.

Let me also indicate this, because this case is over at this point in time, I'm not going to do the thing I said about the CSO, insofar as this individual is concerned, but I will -- obviously, if the plaintiff wants, I will have him escorted out and also people escorted out from the courthouse, if he wants. If you want that, I will do this.

MR. WASHINGTON:  I think the referral is also appropriate.

THE COURT:  What I need to do is have you guys download all of that stuff, and send it to me so that when -- I will indicate that I will be sending this to the U.S.

Attorneys, and also the Marshal.

MR. SEPLOW:  I will get that material.  Should we file it in the case or send it to your email?

THE COURT:  Why don't you -- I don't know if you should file it, per se.

THE COURTROOM DEPUTY:  If it's okay, they can email it to me.

THE COURT:  Why don't you -- I will allow you to file it under seal.

I will allow you to file it under seal, because I'm going to be sending it -- parts or all of it, that is what I'm going to be sending to the U.S. Attorney's Office, and also the Marshal Service.

MR. CONTRERAS:  Thank you.

MR. SINGH:  Thank you, Your Honor.

THE COURTROOM DEPUTY:  All rise for the jury.

(Jury enters the courtroom at 9:43 a.m.)

THE COURTROOM DEPUTY:  You may be seated.

THE COURT:  Good morning, ladies and gentlemen.  I apologize for keeping you waiting.  I have good news and bad news.

The bad news is I made you wait for an hour and a quarter, and I apologize for that.

The good news is the parties have reached a settlement in this matter, so I will be excusing you shortly, so I guess

**UNITED STATES DISTRICT COURT**

that is for those of you who otherwise would not want to be here in this courtroom, et cetera, et cetera, et cetera.

First of all, let me thank you very much for your serving as a jury in this case.

I know it's somewhat inconvenient, and things of that sort.  Frankly, our judicial system could not go forward unless we have services of a jury, such as yourselves, and I will indicate you seem to be very attentive jurors.

I saw you taking notes and things of that sort, so I'm really appreciative of that.

What I will ask you to do is that once I excuse you, if you could -- when you go back to the jury room with your notebooks, just tear out your notes, and take them with you or you can also toss them in the trash can.  No one is going to read them.  It will save us a little bit of time.

Also, for any of you who need anything from your employer, just go back to the first floor, and they will give you whatever you need for your employer -- to present to your employer.

Also, if you do not mind, at this point in time, I'm going to be lifting the order that I originally placed on you, that you were not to discuss this case with anyone.

At this point in time, you are free to discuss this case with anybody.  You are equally free not to discuss this case not with anybody.  It's entirely up to you.

What sometimes I would ask the jury to do, and that is after I excuse you, the attorneys may want to talk to you, and I do find it's helpful for the attorneys to talk to jurors, because I could tell them things until I'm blue in the face, and they usually won't listen.  But if the jurors will tell them something about their performance, they usually will listen.

For those of you who don't mind speaking to the attorneys about their performance or even about the merits of the case, you can talk about the merits of the case if you so desire at this point in time as well.

Just be in the hallway -- yeah, the hallway outside the courtroom, and I will be letting them go about three minutes after I let you guys go.

If you want mind waiting and don't mind talking to them, you are equally free to do that as well.

Let me think, do any of you have any questions?  I'm not going to tell the settlement amount.  You could probably find out if you want to look for it, but at this point I'm not going to tell you what it is.

Aside from that, do any of you have any questions?

No questions?  Any comments?  No comments.

Okay.  Let me thank you once again.  Again, if you don't mind speaking to the attorneys, they will be out in the hallway about three minutes after this point in time.

Thank you very much.

(Jury exits the courtroom at 9:46 a.m.)

THE COURT:  All right.  What I will do is this:  I will dismiss this case administratively, because of the settlement.

Obviously, I retain jurisdiction to enforce the terms of the settlement.

But I will set just a tickler date about six months from today's date, so the matter doesn't fall through the cracks.

So, I will put the matter back on calendar.  I'm administratively closing the case, but I will keep this one date open.

I will put the matter back on calendar for the March the 2nd.

And obviously, if the matter is finalized, you guys can give me notice of that, so you don't have to appear back in this courtroom on March the 2nd.

MR. SEPLOW:  Do you want us to file a status before March the 2nd?

THE COURT:  Yes, just file the status report.  In other words, the sum has been finalized just at any point in time after that, send me notice, and that will be fine.  I will take the March 2nd date off calendar.

MR. SEPLOW:  Is March 2nd just to file a status conference?

**UNITED STATES DISTRICT COURT**

THE COURT:  No.  I'm setting it just as a tickler date, primarily.

Obviously, if the case settles beforehand, we don't need to do anything on March 2nd.

Just give me notice of that, and I will take the March 2nd date off.

If the parties think there is an issue, then give me a status report as to what the issue is.

If there is not an issue, and you need more time, provide me a status report, saying it's going to be finalized, but it needs a little bit more time, so I can massage the March 2nd date.

Okay.  Thank you very much, everybody.  Have a very, very nice day.

THE COURTROOM DEPUTY:  The settlement, is that confidential?

THE COURT:  The settlement is not confidential, no.

MR. SINGH:  Thank you, Your Honor.

MR. CONTRERAS:  Thank you, Your Honor.

THE COURT:  I was wondering why is this case going to trial, maybe they want to vex me for one or two days.

MR. CONTRERAS:  We wanted to see you.

THE COURT:  You can come in every Monday and Thursday mornings.  You don't need to continue with the trial to do that.

UNITED STATES DISTRICT COURT

(The proceedings concluded at 9:49 a.m.)

* * *

**UNITED STATES DISTRICT COURT**

**CERTIFICATE OF OFFICIAL REPORTER**


COUNTY OF LOS ANGELES    )
                         )
STATE OF CALIFORNIA      )


          I, TERRI A. HOURIGAN, Federal Official Realtime Court Reporter, in and for the United States District Court for the Central District of California, do hereby certify that pursuant to Section 753, Title 28, United States Code that the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the judicial conference of the United States.


Date: 27th day of August, 2025.



                              /s/ TERRI A. HOURIGAN
          _____
                  TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
                         Federal Court Reporter


**UNITED STATES DISTRICT COURT**

**$**

$100,000 [1] - 29:17
$200,000 [1] - 32:25

**/**

/s [1] - 43:19

**1**

1055 [1] - 2:13
1512(a)(2 [1] - 26:13
1542 [1] - 32:9
17th [1] - 32:7
18 [1] - 26:13

**2**

2 [1] - 1:14
20 [1] - 14:15
200 [1] - 2:6
2021 [1] - 32:7
2025 [3] - 1:14, 5:1, 43:16
213 [1] - 1:25
22-cv-1306 [1] - 1:7
226 [1] - 2:6
27 [2] - 1:14, 5:1
27th [1] - 43:16
28 [1] - 43:9
2nd [9] - 2:8, 40:14, 40:17, 40:19, 40:23, 40:24, 41:4, 41:6, 41:12

**3**

30 [1] - 30:24
320 [1] - 2:13
350 [1] - 1:24
360 [1] - 2:8
3838 [2] - 1:23, 43:20

**4**

40th [1] - 2:18
4311 [1] - 1:24
444 [1] - 2:18

**6**

6th [2] - 6:17, 16:16

**7**

753 [1] - 43:9

**8**

894-2849 [1] - 1:25
8:30 [2] - 1:15, 5:2
8th [1] - 2:8

**9**

90012 [2] - 1:24, 2:9
90071 [1] - 2:18
90254 [1] - 2:6
91106 [1] - 2:14
9:43 [1] - 37:17
9:46 [1] - 40:2
9:49 [1] - 42:1

**A**

a.m [5] - 1:15, 5:2, 37:17, 40:2, 42:1
ability [2] - 22:2, 22:4
above-entitled [1] - 43:12
absolute [2] - 11:22, 34:15
absolutely [1] - 9:19
accept [2] - 28:1, 35:15
acceptable [1] - 34:11
accepting [2] - 35:2, 35:4
accepts [1] - 28:6
accosted [4] - 6:7, 7:7, 12:23, 19:10
accosting [1] - 10:23
accurate [1] - 14:14
activity [1] - 14:12
actual [1] - 20:20
add [1] - 25:4
addition [1] - 18:6
additional [2] - 25:9, 25:18
address [1] - 6:25
addressed [3] - 14:24, 19:19, 20:7
administer [1] - 12:13
administration [1] - 12:12
administratively [2] - 40:4, 40:11
admit [2] - 10:24
afraid [1] - 16:5
agents [1] - 31:16
agitated [1] - 13:19
agree [1] - 24:2
agreed [3] - 34:3, 34:17, 34:18
agreement [1] - 31:11
ahead [1] - 31:25
al [2] - 1:5, 1:8
alert [1] - 9:15
alerted [1] - 6:3
allow [2] - 37:8, 37:10
altogether [1] - 12:17
Amendment [1] - 15:13
amount [7] - 29:1, 29:10, 29:13, 29:21, 31:17, 32:25, 39:18
amounts [2] - 29:12, 29:17
ANGELES [6] - 1:8, 1:15, 1:24, 2:15, 5:1, 43:3
Angeles [6] - 2:9, 2:18, 29:9, 32:5, 32:17, 32:20
answer [2] - 27:4, 27:10
ANTIFA [5] - 10:24, 10:25, 15:20, 15:22, 23:13
apologize [3] - 13:22, 37:20, 37:23
appeal [1] - 34:16
appear [2] - 15:25, 40:16
APPEARANCES [1] - 2:1
appreciative [1] - 38:10
approach [1] - 29:13
approached [1] - 11:17
appropriate [3] - 8:5, 26:18, 36:22
approval [4] - 29:8, 32:16, 32:21, 32:23
approved [2] - 29:22, 31:18
approving [1] - 29:9
arising [4] - 32:6, 32:14, 33:15, 33:17
arrive [1] - 31:1
aside [1] - 39:21
aspect [1] - 20:25
asserting [1] - 15:11
assertion [3] - 8:15, 8:24, 11:22
associate [2] - 13:16, 15:15
associated [10] - 8:15, 8:17, 14:22, 16:20, 23:13, 24:1, 24:3, 25:6, 25:23, 26:25
associates [2] - 10:6, 15:24
associating [1] - 9:25
assume [1] - 15:2
assuming [2] - 32:21, 32:24
attack [2] - 12:11, 12:12
attempt [4] - 9:13, 17:5, 19:25, 26:14
attempting [1] - 7:25
attentive [1] - 38:8
Attorney [2] - 2:17, 26:16
attorney's [3] - 29:3, 33:3, 34:9
Attorney's [4] - 17:3, 21:13, 26:10, 37:12
Attorneys [3] - 2:5, 2:13, 37:1
attorneys [5] - 29:1, 39:2, 39:3, 39:9, 39:24
audience [1] - 5:19
AUGUST [1] - 5:1
August [2] - 1:14, 43:16
authorities [3] - 21:10, 29:9, 29:23
available [1] - 36:2
Avneue [1] - 2:6
award [1] - 34:8
aware [2] - 33:23, 33:24

**B**

bad [2] - 37:20, 37:22
bar [2] - 7:23, 7:24
barred [1] - 9:18
basis [4] - 10:20, 14:13, 16:25, 25:15
Beach [1] - 2:6
became [1] - 33:24
bed [1] - 34:20
beforehand [1] - 41:3
begin [1] - 23:25
behalf [1] - 25:7
between [2] - 23:3, 36:10
binding [1] - 33:7
bit [3] - 5:14, 38:15, 41:11
blah [6] - 31:16
bleeding [1] - 10:7
blue [2] - 10:7, 39:4
Board [2] - 32:18, 33:9
bodies [1] - 32:17
bottom [1] - 23:15
Boulevard [1] - 2:13
Boy [3] - 5:18, 15:14, 15:17
Boys [6] - 16:8, 16:13, 22:15, 25:6, 27:8, 27:11
BRIAN [1] - 2:17
bring [4] - 24:23, 27:20, 28:21, 36:14
bringing [1] - 35:21
Budget [1] - 32:18
built [1] - 22:10
built-in [1] - 22:10
BURKE [1] - 2:16
Busailah [2] - 9:3, 12:4
BUSAILAH [6] - 2:11, 2:12, 23:8, 23:18, 23:22, 25:9
BY [4] - 2:4, 2:8, 2:12, 2:17

**C**

calendar [3] - 40:10, 40:13, 40:23
CALIFORNIA [5] - 1:2, 1:15, 1:24, 5:1, 43:4
California [6] - 2:6, 2:9, 2:14, 2:18, 32:9, 43:8
capable [1] - 17:14
capital [2] - 6:18, 16:15
caricature [2] - 16:3, 20:14
Case [1] - 1:7
case [26] - 6:21, 6:22, 7:3, 7:4, 7:8, 9:5, 15:21, 20:9, 22:17, 24:7, 27:9, 31:4, 34:5, 36:15, 37:3, 38:4, 38:22, 38:23, 38:24, 39:10, 40:4, 40:11, 41:3, 41:20
cases [1] - 29:21
caused [1] - 14:11
CCRR [1] - 1:23
Central [1] - 43:8
CENTRAL [2] - 1:2
certain [2] - 29:12
certainly [2] - 20:21, 30:20

UNITED STATES DISTRICT COURT

**CERTIFICATE** [1] - 43:1
**certify** [1] - 43:8
**cetera** [9] - 10:14, 33:3, 33:10, 33:14, 33:15, 38:2
**characterize** [1] - 20:19
**check** [1] - 32:24
**CHRISTIAN** [2] - 2:7, 2:8
**circulate** [1] - 30:6
**circumstance** [1] - 18:25
**City** [11] - 29:9, 29:18, 32:5, 32:12, 32:17, 32:19, 32:21, 32:23, 32:24, 33:9
**city** [1] - 35:19
**CITY** [2] - 1:8, 2:15
**City's** [2] - 32:18
**Civil** [1] - 32:9
**claim** [1] - 32:13
**claimed** [1] - 23:12
**claiming** [1] - 16:7
**claims** [5] - 31:15, 32:5, 32:8, 32:14, 33:18
**Claims** [2] - 32:18, 33:9
**clarify** [2] - 12:3, 19:17
**CLAY** [1] - 2:5
**clearly** [1] - 10:5
**clerk** [6] - 7:15, 7:18, 9:16, 30:13, 30:16, 36:14
**client** [8] - 6:3, 7:6, 9:12, 9:14, 16:24, 24:20, 28:2, 28:6
**close** [1] - 35:11
**closer** [1] - 35:12
**closing** [1] - 40:11
**Code** [2] - 32:9, 43:9
**coherently** [1] - 18:4
**coin** [1] - 36:13
**colleague** [2] - 23:3, 23:5
**colleagues** [1] - 27:4
**colluded** [1] - 14:10
**collusion** [1] - 22:25
**Colorado** [1] - 2:13
**comfortable** [4] - 11:5, 17:16, 18:1, 20:9
**comfortably** [1] - 17:14
**coming** [2] - 21:21, 25:10
**comments** [2] -

39:22
**Committee** [1] - 32:19
**concern** [8] - 9:8, 9:21, 10:17, 11:4, 17:11, 20:4, 21:22
**concerned** [1] - 36:17
**concerning** [1] - 20:25
**concluded** [1] - 42:1
**condition** [1] - 34:7
**conditions** [1] - 34:6
**conduct** [2] - 21:5, 21:7
**confer** [1] - 24:19
**conference** [2] - 40:25, 43:13
**confers** [1] - 8:19
**confidential** [2] - 41:16, 41:17
**confirmed** [1] - 6:16
**conformance** [1] - 43:13
**confronted** [1] - 22:16
**connection** [1] - 12:6
**conspiracy** [1] - 11:20
**contact** [5] - 9:16, 27:7, 27:10, 27:11, 33:25
**contacting** [2] - 21:12
**context** [6] - 10:5, 15:16, 15:23, 16:6, 24:11, 30:25
**contextualized** [1] - 18:24
**contingency** [1] - 31:18
**contingent** [2] - 29:8, 32:16
**continue** [1] - 41:24
**continued** [1] - 15:8
**continues** [1] - 7:23
**CONTRERAS** [30] - 2:7, 2:8, 5:10, 5:13, 5:18, 5:22, 6:2, 6:12, 7:1, 7:4, 8:6, 8:11, 8:17, 8:22, 25:7, 27:14, 27:18, 27:22, 27:25, 28:6, 28:23, 30:4, 34:12, 34:18, 35:8, 35:24, 36:8, 37:14, 41:19, 41:22
**convenient** [1] - 30:6
**conversation** [2] - 11:10, 23:19
**conversations** [1] -

14:24
**converse** [1] - 15:8
**conversing** [1] - 15:7
**correct** [2] - 33:5, 43:10
**costs** [2] - 33:2, 34:9
**Council** [5] - 29:18, 32:19, 32:22, 32:23, 33:9
**counsel** [25] - 11:12, 12:15, 12:16, 12:19, 13:7, 13:19, 14:17, 14:18, 14:19, 14:21, 15:11, 22:18, 24:6, 25:3, 26:20, 32:2, 33:1, 33:20, 33:25, 34:24, 34:25, 35:6, 35:7, 35:17, 36:4
**COUNSEL** [1] - 2:1
**counterclaims** [1] - 33:14
**COUNTY** [1] - 43:3
**course** [3] - 16:22, 25:18, 33:6
**COURT** [104] - 1:1, 1:23, 5:8, 5:12, 5:17, 5:21, 6:11, 6:19, 7:2, 7:9, 7:14, 7:18, 8:8, 8:14, 8:20, 9:2, 9:4, 9:9, 10:2, 10:10, 11:4, 11:11, 12:8, 12:14, 12:24, 13:4, 13:12, 14:1, 14:4, 14:21, 15:2, 15:16, 16:3, 16:18, 16:23, 17:15, 17:23, 18:7, 18:12, 19:4, 19:23, 20:6, 20:13, 21:1, 21:23, 22:4, 22:12, 22:22, 23:2, 23:17, 24:2, 24:16, 24:21, 25:3, 25:8, 25:11, 27:3, 27:12, 27:16, 27:20, 27:24, 28:8, 29:3, 29:11, 29:19, 29:24, 30:8, 30:13, 30:15, 30:18, 30:21, 31:5, 31:14, 31:22, 31:25, 33:2, 33:6, 33:13, 33:19, 34:2, 34:4, 34:14, 34:20, 34:22, 35:2, 35:6, 35:9, 35:13, 35:15, 35:17, 35:19, 35:21, 35:25, 36:10, 36:23, 37:4, 37:8, 37:19, 40:3, 40:20, 41:1, 41:17, 41:20, 41:23
**court** [8] - 6:13, 13:2, 13:24, 14:6, 21:19,

21:20, 21:21, 22:10
**Court** [8] - 5:6, 5:16, 14:7, 21:19, 21:25, 43:7, 43:20
**courthouse** [19] - 6:5, 7:24, 9:14, 9:16, 9:18, 10:1, 10:3, 10:4, 10:14, 17:1, 17:2, 17:9, 19:1, 20:2, 21:15, 25:25, 26:3, 26:7, 36:19
**courtroom** [18] - 7:23, 9:14, 11:14, 13:5, 15:7, 16:14, 16:17, 17:8, 17:22, 17:24, 19:25, 21:15, 23:21, 37:17, 38:2, 39:13, 40:2, 40:17
**COURTROOM** [8] - 5:5, 7:12, 7:17, 25:1, 37:6, 37:16, 37:18, 41:15
**covers** [2] - 31:14, 31:15
**cracks** [1] - 40:9
**CRR** [1] - 43:20
**CSO** [4] - 7:12, 7:15, 26:6, 36:17
**CSOs** [10] - 7:14, 7:21, 8:4, 9:11, 9:15, 11:25, 14:9, 22:1, 25:25, 26:1
**CSR** [2] - 1:23, 43:20
**current** [1] - 18:24

## D

**date** [7] - 40:8, 40:9, 40:12, 40:23, 41:2, 41:6, 41:12
**Date** [1] - 43:16
**DAY** [1] - 1:14
**days** [2] - 32:22, 41:21
**deal** [1] - 19:21
**death** [7] - 10:8, 13:15, 16:2, 18:5, 18:8, 18:24, 20:20
**decide** [1] - 32:23
**decision** [2] - 29:25, 34:14
**declare** [6] - 16:25, 17:19, 21:3, 25:14, 25:21, 30:1
**declared** [1] - 14:2
**defence** [1] - 25:8
**DEFENDANT** [2] - 2:10, 2:15
**defendant** [15] - 12:6, 13:7, 14:16,

14:20, 14:25, 15:1, 15:6, 22:18, 23:3, 23:6, 27:1, 27:6, 34:22, 35:9, 36:11
**defendants** [5] - 8:16, 15:9, 33:14, 33:24, 34:1
**Defendants** [1] - 1:9
**defense** [29] - 5:22, 8:7, 8:9, 11:6, 11:7, 11:12, 12:1, 12:2, 12:15, 12:19, 13:7, 13:23, 14:4, 14:5, 14:10, 14:17, 14:18, 14:19, 14:21, 14:22, 21:23, 22:18, 22:24, 24:1, 24:3, 26:24, 26:25, 27:6, 35:17
**delay** [1] - 26:14
**department** [1] - 20:7
**depicting** [1] - 19:16
**depiction** [2] - 18:10, 18:21
**DEPUTY** [8] - 5:5, 7:12, 7:17, 25:1, 37:6, 37:16, 37:18, 41:15
**desire** [1] - 39:11
**detail** [1] - 30:25
**details** [2] - 28:20, 30:3
**determination** [2] - 16:4, 26:17
**die** [1] - 20:22
**difficult** [2] - 18:3, 20:10
**directed** [3] - 14:11, 18:12, 32:25
**discretion** [1] - 34:9
**discuss** [3] - 38:22, 38:23, 38:24
**discussed** [4] - 23:23, 34:24, 34:25
**discussing** [1] - 23:20
**dismiss** [2] - 32:4, 40:4
**dismissed** [2] - 19:12, 23:14
**distraction** [2] - 5:15, 7:5
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [3] - 5:6, 43:7, 43:8
**disturbed** [1] - 16:24
**disturbing** [1] - 13:20
**DIVISION** [1] - 1:2
**dollar** [1] - 31:17

**UNITED STATES DISTRICT COURT**

**done** [3] - 21:5, 21:6, 21:14
**down** [2] - 23:19, 28:20
**download** [1] - 36:24
**driving** [1] - 31:1
**duress** [2] - 28:7, 28:11
**during** [6] - 6:13, 7:15, 9:18, 25:18, 26:3, 26:19

## E

**East** [2] - 2:8, 2:13
**edited** [1] - 13:18
**effectively** [1] - 21:18
**either** [4] - 7:22, 25:4, 25:19, 26:14
**elements** [1] - 33:20
**email** [3] - 30:15, 37:3, 37:6
**employer** [3] - 38:17, 38:18, 38:19
**encourage** [1] - 22:16
**end** [2] - 6:9, 19:10
**enforce** [3] - 34:6, 34:10, 40:6
**enforcement** [2] - 21:9, 21:12
**Enrique** [1] - 16:13
**enters** [1] - 37:17
**entire** [1] - 33:4
**entirely** [1] - 38:25
**entitled** [1] - 43:12
**equally** [2] - 38:24, 39:16
**escorted** [5] - 25:24, 26:5, 36:18, 36:19
**essentially** [2] - 6:7, 7:6
**estimate** [1] - 33:7
**et** [11] - 1:5, 1:8, 10:14, 33:3, 33:10, 33:14, 38:2
**events** [2] - 13:17, 32:6
**evidence** [3] - 14:10, 22:24, 26:12
**example** [2] - 29:14, 31:18
**except** [1] - 20:8
**excuse** [4] - 28:22, 36:2, 38:11, 39:2
**excusing** [1] - 37:25
**executed** [1] - 34:5
**EXHIBIT** [1] - 4:1
**Exhibit** [1] - 4:2

**exhibits** [2] - 4:4, 35:25
**exits** [1] - 40:2
**expect** [4] - 10:16, 21:11, 29:22, 30:23
**expectation** [1] - 33:8
**experience** [1] - 29:21
**explain** [1] - 23:2
**extension** [1] - 23:18
**extent** [1] - 16:4
**extreme** [1] - 22:13
**eyes** [1] - 10:7

## F

**face** [2] - 10:7, 39:4
**facetious** [1] - 22:6
**fact** [4] - 9:12, 16:10, 22:14, 24:8
**fair** [1] - 21:22
**faith** [1] - 29:24
**fall** [1] - 40:9
**false** [2] - 8:24, 11:22
**familiar** [2] - 18:13, 31:6
**far** [1] - 29:16
**fear** [1] - 23:1
**FEDERAL** [1] - 1:23
**Federal** [2] - 43:6, 43:20
**feedback** [1] - 36:5
**fees** [4] - 29:3, 33:3, 34:1, 34:9
**few** [2] - 5:23, 24:19
**fiance** [3] - 17:13, 20:5, 25:19
**figure** [1] - 13:2
**file** [7] - 37:3, 37:5, 37:9, 37:10, 40:18, 40:20, 40:24
**finalized** [3] - 40:15, 40:21, 41:10
**Finance** [1] - 32:18
**fine** [3] - 30:16, 33:22, 40:22
**First** [1] - 15:13
**FIRST** [1] - 1:24
**first** [7] - 13:12, 15:17, 17:1, 21:2, 25:14, 38:3, 38:17
**Floor** [2] - 2:8, 2:18
**floor** [1] - 38:17
**Flower** [1] - 2:18
**follow** [1] - 26:21
**followed** [1] - 26:5
**followers** [1] - 20:23
**following** [1] - 32:17
**footage** [1] - 6:1

**FOR** [3] - 2:3, 2:10, 2:15
**foregoing** [1] - 43:10
**form** [5] - 9:18, 30:11, 31:8, 31:11, 31:12
**formal** [1] - 14:1
**format** [1] - 43:12
**forward** [1] - 38:6
**frankly** [2] - 5:13, 38:6
**free** [3] - 38:23, 38:24, 39:16
**freely** [1] - 15:14
**fully** [1] - 29:21
**future** [1] - 21:7

## G

**general** [1] - 31:6
**generally** [1] - 31:22
**gentleman** [3] - 5:20, 6:6, 13:4
**gentleman's** [1] - 6:2
**gentlemen** [1] - 37:19
**GEORGE** [1] - 1:3
**George** [1] - 5:7
**GINTER** [24] - 2:17, 28:4, 28:25, 29:7, 29:17, 29:20, 30:5, 30:10, 30:14, 30:17, 30:20, 30:22, 31:10, 31:20, 31:24, 32:4, 33:5, 33:12, 33:17, 34:3, 34:13, 34:19, 34:21, 35:20
**gray** [1] - 5:20
**grill** [1] - 27:5
**grounds** [2] - 10:18, 12:2
**group** [1] - 20:23
**guess** [3] - 23:5, 27:8, 37:25
**GUIZAR** [6] - 12:16, 12:19, 12:22, 13:3, 13:19, 13:25
**guy** [1] - 9:15
**guys** [8] - 28:19, 31:5, 36:1, 36:2, 36:12, 36:23, 39:14, 40:15

## H

**hallway** [3] - 39:12, 39:24
**hand** [1] - 11:2
**hands** [8] - 11:18, 12:5, 14:16, 14:20,

14:25, 15:3, 15:6, 15:15
**handshake** [1] - 23:18
**hanged** [3] - 13:15, 16:2, 19:16
**happy** [1] - 9:24
**harassed** [1] - 18:1
**harassment** [1] - 20:19
**HARRIS** [1] - 2:4
**hear** [2] - 11:6, 21:23
**heard** [1] - 34:23
**hearing** [1] - 15:9
**held** [1] - 43:11
**help** [2] - 15:1, 36:4
**helpful** [1] - 39:3
**hereby** [1] - 43:8
**Hermosa** [1] - 2:6
**higher** [1] - 29:14
**highly** [1] - 24:12
**himself** [2] - 18:8, 27:7
**hire** [5] - 11:23, 22:3, 22:4, 22:11, 22:19
**HOFFMAN** [1] - 2:4
**Honor** [44] - 5:10, 9:21, 9:24, 10:9, 10:17, 11:3, 12:3, 12:11, 12:17, 14:3, 15:24, 16:16, 17:11, 17:25, 18:6, 18:16, 19:3, 19:17, 19:18, 19:20, 20:12, 21:17, 23:8, 24:15, 24:24, 25:9, 27:15, 27:19, 29:18, 31:13, 33:5, 33:17, 34:12, 34:13, 34:19, 34:21, 35:4, 35:8, 35:18, 35:20, 35:24, 37:15, 41:18, 41:19
**HONORABLE** [1] - 1:3
**Honorable** [1] - 5:7
**hopefully** [1] - 8:8
**hour** [1] - 37:22
**HOURIGAN** [4] - 1:23, 43:6, 43:19, 43:20
**hung** [2] - 10:7, 20:15

## I

**idea** [1] - 12:6
**identified** [1] - 25:5
**illustration** [3] - 13:14, 18:21, 19:15
**image** [3] - 13:13,

13:14
**imagine** [1] - 20:22
**immediately** [3] - 18:25, 19:14, 30:12
**important** [1] - 15:23
**improper** [1] - 11:4
**incident** [11] - 6:23, 7:20, 9:1, 10:22, 12:5, 15:8, 19:11, 25:13, 33:16, 33:18
**incidents** [1] - 19:8
**include** [1] - 29:3
**included** [1] - 31:21
**including** [2] - 11:20, 27:1
**inclusive** [1] - 33:2
**inconvenient** [1] - 38:5
**incur** [1] - 34:1
**indemnify** [1] - 32:12
**indemnity** [1] - 33:23
**INDEX** [2] - 3:1, 4:1
**indicate** [6] - 26:1, 26:11, 36:10, 36:15, 36:25, 38:8
**indicated** [2] - 9:12, 14:21
**indication** [1] - 24:2
**individual** [15] - 8:21, 14:22, 17:22, 18:17, 19:24, 20:1, 22:17, 23:3, 23:8, 25:5, 26:2, 26:3, 27:1, 27:7, 36:17
**individual's** [1] - 21:5
**inform** [1] - 26:1
**information** [3] - 23:12, 26:21, 30:9
**informed** [1] - 25:12
**innocent** [2] - 24:9, 24:10
**inquiry** [1] - 8:13
**inside** [2] - 6:18, 17:2
**insofar** [3] - 21:6, 33:8, 36:17
**insurrectionist** [1] - 6:17
**intent** [1] - 18:14
**interesting** [1] - 15:10
**interpret** [1] - 10:8
**intimidate** [5] - 8:1, 9:13, 11:20, 18:14, 26:14
**intimidated** [2] - 9:23, 21:21
**intimidating** [1] - 17:6

UNITED STATES DISTRICT COURT

**intimidation** [2] - 7:8, 17:12
**involve** [2] - 12:1, 14:5
**involved** [3] - 11:19, 14:19, 27:9
**involvement** [2] - 8:7, 10:21
**issue** [21] - 5:15, 6:4, 6:6, 6:16, 6:25, 8:6, 12:2, 13:23, 13:24, 21:2, 21:4, 21:24, 21:25, 24:15, 25:5, 25:20, 32:24, 41:7, 41:8, 41:9
**item** [1] - 12:25
**items** [1] - 31:19
**itself** [1] - 29:5

## J

**January** [2] - 6:17, 16:16
**Javier** [1] - 7:11
**JENAL** [4] - 2:10, 35:12, 35:14, 35:16
**Jenal** [6] - 11:1, 32:6, 32:13, 35:10, 35:14, 35:15
**JOHN** [2] - 2:5, 2:10
**joined** [1] - 35:8
**joins** [1] - 35:7
**judge** [1] - 5:7
**JUDGE** [1] - 1:3
**judicial** [2] - 38:6, 43:13
**July** [1] - 32:7
**jurisdiction** [3] - 21:19, 34:5, 40:6
**jurisdictional** [1] - 21:18
**jurors** [4] - 24:6, 38:8, 39:3, 39:5
**Jury** [2] - 37:17, 40:2
**jury** [12] - 24:21, 24:23, 27:21, 28:21, 35:21, 36:1, 36:14, 37:16, 38:4, 38:7, 38:12, 39:1
**justice** [2] - 12:12, 12:13

## K

**keep** [1] - 40:11
**keeping** [2] - 30:22, 37:20
**kept** [1] - 15:11
**kicker** [1] - 28:12
**kind** [1] - 5:15

**knowledge** [2] - 16:19
**knowledgeable** [1] - 28:15
**known** [4] - 22:15, 31:15, 32:5, 32:8

## L

**ladies** [1] - 37:19
**LAPD** [1] - 22:1
**last** [3] - 9:22, 28:12, 35:10
**late** [1] - 24:22
**latter** [1] - 21:8
**Law** [3] - 2:5, 2:13, 2:17
**law** [2] - 21:9, 21:12
**LAW** [1] - 2:7
**lawsuit** [4] - 8:1, 32:4, 32:15, 33:18
**leader** [2] - 16:12, 16:13
**least** [6] - 5:14, 8:12, 17:13, 17:14, 33:24
**leaving** [5] - 10:1, 18:18, 19:1, 19:6, 19:12
**left** [1] - 6:6
**length** [1] - 23:10
**letting** [1] - 39:13
**levels** [1] - 29:14
**lien** [3] - 32:13, 33:24, 34:1
**liens** [2] - 32:10, 33:23
**Lieutenant** [3] - 11:1, 32:6, 32:12
**life** [3] - 20:11, 20:24, 22:9
**lifting** [1] - 38:21
**listen** [2] - 39:5, 39:7
**literally** [1] - 6:18
**litigation** [1] - 17:6
**LLP** [3] - 2:4, 2:11, 2:16
**look** [4] - 12:15, 26:12, 26:16, 39:19
**LOS** [6] - 1:8, 1:15, 1:24, 2:15, 5:1, 43:3
**Los** [6] - 2:9, 2:18, 29:9, 32:5, 32:17, 32:19
**luckily** [1] - 6:9
**lunch** [5] - 6:13, 18:18, 19:1, 19:7, 19:12
**lynch** [1] - 6:14

## M

**man** [11] - 9:24, 11:8, 11:13, 12:4, 14:11, 14:15, 16:14, 16:16, 22:25, 27:11
**March** [8] - 40:13, 40:17, 40:19, 40:23, 40:24, 41:4, 41:5, 41:11
**massage** [1] - 41:11
**material** [1] - 37:2
**matter** [18] - 7:24, 14:6, 17:3, 17:19, 18:15, 26:9, 26:12, 27:13, 27:14, 27:18, 32:11, 35:22, 37:25, 40:9, 40:10, 40:13, 40:15, 43:12
**matters** [3] - 21:2, 32:13, 34:15
**mayor** [1] - 32:22
**Mayor** [1] - 33:10
**mean** [6] - 6:20, 9:19, 12:22, 16:9, 20:21, 28:2
**mediator** [2] - 30:6, 30:8
**meet** [1] - 8:18
**member** [6] - 15:14, 15:20, 15:22, 16:8, 22:14, 27:6
**merits** [2] - 39:9, 39:10
**message** [1] - 18:20
**messaged** [1] - 18:22
**messages** [1] - 20:22
**met** [1] - 26:25
**MICHAEL** [2] - 2:4, 2:12
**middle** [1] - 18:2
**might** [2] - 30:5, 36:4
**mind** [7] - 36:3, 36:6, 38:20, 39:8, 39:15, 39:24
**minutes** [3] - 30:24, 39:13, 39:25
**mispronounce** [1] - 35:10
**mistrial** [10] - 10:19, 12:2, 14:2, 14:13, 16:25, 17:19, 21:3, 25:14, 25:22, 30:1
**moment** [1] - 28:5
**moments** [1] - 12:23

**Monday** [1] - 41:23
**months** [3] - 33:12, 33:13, 40:8
**Morales** [4] - 5:25, 6:2, 13:16, 16:14
**morning** [2] - 5:10, 37:19
**mornings** [1] - 41:24
**most** [2] - 22:13, 30:5
**motion** [1] - 14:2
**move** [1] - 23:19
**MR** [133] - 5:10, 5:13, 5:18, 5:22, 5:25, 6:2, 6:12, 7:1, 7:4, 8:6, 8:11, 8:17, 8:22, 8:23, 8:25, 9:3, 9:6, 9:7, 9:21, 10:4, 10:8, 10:17, 11:3, 11:7, 11:13, 12:3, 12:9, 12:16, 12:18, 12:19, 12:20, 12:22, 12:23, 13:1, 13:3, 13:10, 13:13, 13:19, 13:21, 13:22, 13:23, 13:25, 14:3, 14:5, 14:14, 14:23, 15:5, 15:10, 15:23, 16:11, 16:13, 16:15, 16:16, 16:22, 17:11, 17:21, 17:25, 18:11, 18:16, 19:6, 19:18, 20:3, 20:8, 20:21, 21:17, 21:24, 22:8, 22:21, 22:23, 23:5, 23:8, 23:18, 23:20, 23:22, 24:14, 24:19, 24:24, 25:7, 25:9, 27:2, 27:10, 27:14, 27:18, 27:22, 27:25, 28:4, 28:6, 28:23, 28:25, 29:7, 29:17, 29:20, 30:4, 30:5, 30:10, 30:14, 30:17, 30:20, 30:22, 31:10, 31:20, 31:24, 32:4, 33:5, 33:12, 33:17, 33:22, 34:3, 34:12, 34:13, 34:18, 34:19, 34:21, 34:25, 35:4, 35:8, 35:12, 35:14, 35:16, 35:18, 35:20, 35:24, 36:8, 36:9, 36:21, 37:2, 37:14, 37:15, 40:18, 40:24, 41:18, 41:19, 41:22
**multiple** [1] - 8:18
**MUNA** [1] - 2:12
**Muna** [1] - 9:1

**name** [3] - 5:24, 6:3, 35:10
**names** [1] - 9:4
**nature** [5] - 15:24, 17:18, 23:11, 23:25, 29:21
**need** [12] - 5:13, 14:8, 29:7, 29:17, 30:17, 35:23, 36:23, 38:16, 38:18, 41:3, 41:9, 41:24
**needs** [3] - 11:23, 31:4, 41:11
**never** [2] - 8:23, 11:19
**news** [6] - 5:9, 6:20, 37:20, 37:21, 37:22, 37:24
**nice** [1] - 41:14
**night** [1] - 9:23
**NO** [2] - 1:23, 43:20
**nobody** [1] - 26:24
**none** [1] - 12:7
**normal** [1] - 33:6
**notebooks** [1] - 38:13
**notes** [2] - 38:9, 38:13
**nothing** [3] - 12:16, 25:9, 27:14
**notice** [3] - 40:16, 40:22, 41:5
**number** [2] - 29:8, 31:4

## O

**observations** [1] - 26:8
**obviously** [12] - 6:4, 15:1, 15:25, 17:23, 24:22, 26:19, 33:7, 34:5, 36:18, 40:6, 40:15, 41:3
**occur** [2] - 9:20, 32:24
**occurred** [2] - 7:10, 32:6
**OF** [9] - 1:2, 1:8, 1:13, 2:1, 2:7, 2:15, 43:1, 43:3, 43:4
**offer** [6] - 25:23, 27:22, 27:25, 28:4, 28:6, 29:8
**Office** [4] - 17:4, 21:13, 26:10, 37:12
**officers** [1] - 21:12
**OFFICES** [1] - 2:7

**OFFICIAL** [2] - 1:23, 43:1
**Official** [1] - 43:6
**once** [6] - 6:6, 28:21, 34:4, 36:2, 38:11, 39:23
**one** [11] - 10:22, 19:10, 19:19, 20:21, 26:24, 27:4, 31:7, 35:10, 38:14, 40:11, 41:21
**ongoing** [2] - 17:7, 26:4
**online** [1] - 6:14
**oOo** [1] - 5:3
**open** [2] - 6:5, 40:12
**opportunity** [1] - 33:25
**order** [4] - 5:6, 24:5, 25:2, 38:21
**organization** [1] - 22:15
**originally** [1] - 38:21
**otherwise** [1] - 38:1
**outlines** [1] - 31:6
**outside** [12] - 10:4, 10:16, 11:24, 12:23, 16:15, 17:1, 21:15, 21:20, 22:10, 23:9, 30:17, 39:12
**own** [1] - 18:17

**P**

**Page** [2] - 3:2, 4:2
**page** [1] - 43:12
**paid** [1] - 31:17
**part** [5] - 7:16, 9:21, 10:17, 16:1, 20:3
**participants** [1] - 8:1
**participated** [1] - 22:25
**particular** [7] - 6:23, 17:19, 18:10, 18:15, 25:13, 26:23, 27:18
**parties** [7] - 15:21, 24:6, 28:16, 33:8, 36:1, 37:24, 41:7
**partner** [5] - 7:7, 9:22, 18:18, 19:6, 19:12
**parts** [1] - 37:11
**party** [3] - 17:6, 23:6, 26:14
**Pasadena** [1] - 2:14
**past** [1] - 18:20
**pay** [1] - 33:25
**payable** [1] - 32:25
**pendency** [1] - 9:19
**people** [6] - 8:9,

9:25, 11:17, 16:20, 20:23, 36:19
**per** [1] - 37:5
**performance** [3] - 36:5, 39:6, 39:9
**period** [1] - 26:4
**person** [10] - 6:12, 6:16, 7:25, 8:7, 10:23, 12:3, 15:17, 16:8, 22:9, 26:5
**person's** [1] - 10:21
**personally** [1] - 18:22
**persons** [1] - 25:23
**petrified** [1] - 7:6
**phone** [2] - 6:7, 13:1
**photo** [1] - 16:2
**photograph** [4] - 9:24, 19:2, 19:4, 19:5
**photographed** [1] - 9:6
**photographs** [7] - 6:13, 11:3, 13:17, 15:25, 16:1, 16:11, 19:9
**photos** [4] - 18:25, 19:11, 19:14, 19:15
**picture** [2] - 12:9, 18:18
**pictures** [2] - 9:25, 10:6
**Pier** [1] - 2:6
**place** [1] - 15:3
**placed** [2] - 24:5, 38:21
**plaintiff** [17] - 16:5, 23:1, 23:10, 24:9, 25:7, 25:19, 25:23, 26:19, 28:1, 28:23, 30:4, 32:10, 32:12, 32:14, 34:23, 36:11, 36:18
**PLAINTIFF** [1] - 2:3
**plaintiff's** [6] - 26:20, 32:25, 33:19, 33:25, 35:6, 35:7
**Plaintiffs** [1] - 1:6
**plaintiffs** [2] - 31:8, 31:10
**play** [1] - 9:11
**point** [21] - 6:19, 11:16, 12:21, 12:22, 15:18, 16:4, 16:5, 17:16, 17:20, 21:18, 25:15, 25:21, 28:18, 30:3, 36:16, 38:20, 38:23, 39:11, 39:19, 39:25, 40:21
**points** [1] - 19:18
**police** [1] - 20:7

**position** [1] - 22:13
**possibly** [1] - 33:15
**post** [1] - 18:17
**posted** [8] - 6:14, 13:14, 18:18, 19:14, 19:15, 20:22
**posting** [3] - 10:6, 20:13, 20:14
**practically** [2] - 7:17, 7:19
**preliminary** [1] - 24:14
**prepare** [2] - 18:2, 31:2
**present** [3] - 7:15, 24:18, 38:18
**presiding** [1] - 5:7
**presume** [8] - 28:10, 28:14, 28:15, 29:16, 31:5, 31:7, 31:14, 33:13
**pretty** [1] - 36:12
**previous** [1] - 27:7
**previously** [2] - 18:22, 26:25
**primarily** [1] - 41:2
**private** [3] - 22:3, 22:4, 22:19
**problem** [4] - 17:15, 21:14, 24:11, 30:18
**problematic** [1] - 24:12
**proceed** [1] - 19:20
**proceeded** [3] - 11:1, 14:15, 15:6
**proceeding** [1] - 26:15
**PROCEEDINGS** [1] - 1:13
**proceedings** [4] - 21:19, 34:10, 42:1, 43:11
**process** [1] - 33:9
**promptly** [1] - 30:11
**properly** [1] - 20:6
**prospect** [1] - 21:7
**protection** [2] - 10:14, 22:10
**Proud** [9] - 5:18, 15:14, 15:17, 16:8, 16:13, 22:15, 25:6, 27:8, 27:11
**provide** [4] - 14:7, 26:20, 30:25, 41:10
**provided** [1] - 26:21
**providing** [1] - 10:13
**pursuant** [1] - 43:9
**put** [22] - 7:9, 8:8, 8:9, 10:2, 15:16, 18:7, 20:10, 22:12, 25:17,

28:10, 28:17, 28:18, 28:20, 28:23, 28:25, 29:11, 30:2, 31:23, 34:20, 40:10, 40:13

**Q**

**quarter** [1] - 37:23
**questions** [6] - 14:25, 15:19, 23:10, 39:17, 39:21, 39:22

**R**

**raise** [1] - 5:16
**re** [1] - 18:24
**re-contextualized** [1] - 18:24
**reach** [1] - 24:17
**reached** [1] - 37:24
**read** [1] - 38:15
**ready** [3] - 30:2, 30:4, 30:22
**real** [2] - 16:23, 19:24
**really** [3] - 8:2, 22:20, 38:10
**Realtime** [1] - 43:6
**reason** [1] - 6:22
**receive** [1] - 18:8
**received** [1] - 4:4
**recess** [1] - 24:25
**recognize** [2] - 11:15, 13:4
**recommended** [1] - 19:13
**reconsider** [1] - 25:20
**record** [10] - 9:8, 28:17, 28:18, 28:20, 28:21, 28:24, 28:25, 30:3, 31:23, 32:1
**recorded** [3] - 9:10, 10:1, 10:3
**refer** [3] - 17:3, 20:18, 26:9
**reference** [1] - 26:22
**referral** [1] - 36:21
**referring** [1] - 19:5
**regards** [2] - 21:5, 25:5
**regulations** [1] - 43:13
**related** [1] - 32:13
**relates** [1] - 27:8
**relating** [1] - 32:11
**relationship** [3] - 11:7, 11:19, 14:11
**relationships** [1] - 11:16

**rely** [1] - 29:24
**remain** [2] - 5:5, 25:1
**remains** [1] - 28:4
**remark** [1] - 24:9
**remedy** [1] - 34:8
**report** [7] - 7:10, 7:14, 7:20, 8:4, 40:20, 41:8, 41:10
**reported** [2] - 20:7, 43:11
**REPORTER** [2] - 1:23, 43:1
**Reporter** [2] - 43:7, 43:20
**REPORTER'S** [1] - 1:13
**reposting** [2] - 18:25
**representation** [1] - 16:9
**required** [1] - 29:23
**resolve** [1] - 24:22
**respective** [1] - 36:1
**response** [7] - 14:4, 21:23, 24:17, 25:12, 26:23, 30:19
**responsible** [1] - 32:10
**restroom** [1] - 25:10
**retain** [2] - 34:5, 40:6
**retrial** [1] - 17:20
**return** [1] - 35:25
**reverse** [1] - 29:25
**review** [1] - 32:22
**rise** [1] - 37:16
**road** [1] - 23:19
**ROOM** [1] - 1:24
**room** [1] - 38:12
**RPR** [1] - 43:20

**S**

**safer** [1] - 25:24
**sandwich** [1] - 19:13
**save** [1] - 38:15
**saw** [6] - 8:25, 11:15, 12:4, 12:17, 18:9, 38:9
**scared** [1] - 7:7
**SCHONBRUN** [1] - 2:4
**se** [1] - 37:5
**seal** [4] - 29:5, 29:7, 37:9, 37:10
**seated** [3] - 5:5, 25:1, 37:18
**second** [1] - 21:4
**seconds** [2] - 14:15, 24:19
**Section** [2] - 26:13, 43:9

**security** [10] - 11:24, 13:24, 14:6, 14:7, 21:25, 22:3, 22:5, 22:11, 22:19
**see** [4] - 12:18, 12:25, 26:12, 41:22
**seem** [2] - 15:18, 38:8
**sees** [1] - 22:17
**send** [5] - 30:13, 31:2, 36:24, 37:3, 40:22
**sending** [4] - 30:21, 36:25, 37:11, 37:12
**sends** [1] - 30:11
**sense** [1] - 17:5
**sent** [2] - 15:25, 18:20
**separating** [1] - 21:1
**SEPLOW** [8] - 2:4, 2:4, 12:9, 24:19, 33:22, 37:2, 40:18, 40:24
**Service** [5] - 14:8, 21:25, 26:10, 26:16, 37:13
**services** [1] - 38:7
**serving** [1] - 38:4
**session** [1] - 5:6
**set** [1] - 40:8
**setting** [1] - 41:1
**settle** [1] - 28:11
**settled** [5] - 6:21, 6:22, 7:2, 7:4, 35:22
**settlement** [23] - 28:15, 29:5, 29:16, 29:22, 31:11, 31:12, 32:3, 32:16, 33:21, 34:4, 34:6, 34:8, 34:10, 34:23, 35:3, 35:7, 35:15, 37:24, 39:18, 40:5, 40:7, 41:15, 41:17
**settlements** [4] - 29:1, 29:10, 29:12, 30:12
**settles** [1] - 41:3
**shake** [6] - 11:2, 11:17, 14:15, 14:25, 15:6, 15:15
**shaking** [3] - 12:5, 14:20, 15:3
**shall** [4] - 32:4, 32:10, 32:12, 35:25
**shape** [1] - 9:17
**shop** [1] - 19:13
**shortly** [1] - 37:25
**show** [10] - 9:7, 9:24, 11:11, 12:14, 13:2, 13:3, 13:10, 13:12,

16:11, 23:14
**showing** [1] - 9:25
**shown** [1] - 18:10
**side** [2] - 5:14, 25:4
**sides** [3] - 28:10, 34:11, 34:17
**sidewalk** [1] - 22:1
**significant** [1] - 18:23
**simple** [1] - 8:2
**simply** [1] - 18:13
**Singh** [15] - 6:8, 6:13, 6:15, 9:22, 9:25, 10:6, 10:23, 11:21, 11:23, 14:8, 14:12, 15:20, 17:13, 22:2, 32:4
**SINGH** [17] - 1:5, 9:6, 10:8, 11:3, 12:23, 13:13, 13:22, 16:13, 16:16, 16:22, 18:16, 19:6, 24:24, 34:25, 35:4, 37:15, 41:18
**Singh's** [1] - 15:11
**site** [1] - 18:9
**sitting** [1] - 7:13
**situation** [4] - 6:23, 16:7, 22:19, 26:23
**six** [3] - 33:12, 33:13, 40:8
**so..** [2] - 17:10, 27:23
**sole** [1] - 34:9
**sometimes** [2] - 36:4, 39:1
**somewhat** [3] - 24:8, 28:7, 38:5
**soon** [1] - 31:3
**SORENSEN** [1] - 2:16
**sorry** [3] - 13:19, 19:4, 30:22
**sort** [5] - 7:20, 22:7, 36:5, 38:6, 38:9
**source** [1] - 19:2
**South** [1] - 2:18
**speaking** [12] - 5:23, 8:18, 8:20, 8:21, 8:25, 9:22, 12:4, 14:17, 14:18, 18:4, 39:8, 39:24
**special** [1] - 18:14
**specific** [1] - 23:22
**specifically** [2] - 8:25, 12:4
**staff** [1] - 13:24
**stairs** [1] - 23:16
**standard** [6] - 30:7, 31:11, 31:12, 31:14, 31:19, 31:20
**standing** [1] - 12:9

**start** [3] - 7:1, 17:20, 24:22
**started** [2] - 6:12, 6:24
**STATE** [1] - 43:4
**state** [2] - 28:3, 31:1
**statements** [1] - 6:19
**States** [4] - 5:6, 43:7, 43:9, 43:14
**STATES** [1] - 1:1
**states** [2] - 31:16, 31:17
**status** [5] - 40:18, 40:20, 40:24, 41:8, 41:10
**stenographically** [1] - 43:11
**step** [1] - 30:17
**steps** [2] - 7:22, 8:5
**still** [3] - 15:9, 19:2, 28:2
**stipulate** [1] - 15:21
**stipulation** [4] - 30:7, 30:23, 31:2, 31:12
**STONE** [1] - 2:11
**Stop** [1] - 12:24
**stop** [3] - 7:22, 12:24, 28:8
**STREET** [1] - 1:24
**Street** [2] - 2:8, 2:18
**stuff** [3] - 21:14, 29:4, 36:24
**stunt** [1] - 8:10
**subject** [1] - 34:16
**sufficient** [1] - 26:11
**suggesting** [1] - 8:9
**suit** [1] - 5:20
**Suite** [2] - 2:6, 2:13
**sum** [3] - 33:2, 33:4, 40:21
**supposed** [2] - 12:13, 17:20
**surreptitious** [1] - 16:1
**surreptitiously** [1] - 10:1
**system** [2] - 13:2, 38:6

## T

**table** [4] - 27:23, 27:25, 28:2, 28:4
**Tarrio** [1] - 16:14
**team** [4] - 24:1, 24:3, 26:25, 27:6
**tear** [1] - 38:13
**ten** [1] - 32:22
**terms** [8] - 31:20, 32:2, 33:20, 33:23,

34:6, 34:10, 34:23, 40:6
**TERRI** [4] - 1:23, 43:6, 43:19, 43:20
**testify** [1] - 10:18
**testifying** [9] - 11:5, 17:14, 17:16, 18:1, 20:8, 20:9, 22:16, 23:11, 24:10
**testimony** [3] - 23:24, 25:18, 36:11
**THE** [113] - 2:3, 2:10, 2:15, 5:5, 5:8, 5:12, 5:17, 5:21, 6:11, 6:19, 7:2, 7:9, 7:12, 7:14, 7:17, 7:18, 8:8, 8:14, 8:20, 9:2, 9:4, 9:9, 10:2, 10:10, 11:4, 11:11, 12:8, 12:14, 12:24, 13:4, 13:12, 14:1, 14:4, 14:21, 15:2, 15:16, 16:3, 16:18, 16:23, 17:15, 17:23, 18:7, 18:12, 19:4, 19:23, 20:6, 20:13, 21:1, 21:23, 22:4, 22:12, 22:22, 23:2, 23:17, 24:2, 24:16, 24:21, 25:1, 25:3, 25:8, 25:11, 27:3, 27:12, 27:16, 27:20, 27:24, 28:8, 29:3, 29:11, 29:19, 29:24, 30:8, 30:13, 30:15, 30:18, 30:21, 31:5, 31:14, 31:22, 31:25, 33:2, 33:6, 33:13, 33:19, 34:2, 34:4, 34:14, 34:20, 34:22, 35:2, 35:6, 35:9, 35:13, 35:15, 35:17, 35:19, 35:21, 35:25, 36:10, 36:23, 37:4, 37:6, 37:8, 37:16, 37:18, 37:19, 40:3, 40:20, 41:1, 41:15, 41:17, 41:20, 41:23
**thereafter** [1] - 22:17
**third** [1] - 21:6
**Thomas** [3] - 5:25, 6:2, 16:14
**threat** [4] - 10:8, 18:9, 18:24, 20:20
**threatened** [7] - 18:4, 19:21, 20:4, 20:11, 20:24, 22:9, 22:14
**threatening** [2] - 10:6, 16:1

**threats** [1] - 15:18
**three** [2] - 39:13, 39:25
**thrown** [1] - 18:3
**Thursday** [1] - 41:24
**tickler** [2] - 40:8, 41:1
**Title** [1] - 43:9
**today** [1] - 5:19
**today's** [1] - 40:9
**together** [3] - 12:10, 13:17, 13:18
**tomorrow** [1] - 23:24
**took** [1] - 15:3
**toss** [2] - 36:12, 38:14
**toward** [1] - 14:12
**TRANSCRIPT** [1] - 1:13
**transcript** [2] - 43:10, 43:12
**trash** [1] - 38:14
**TRIAL** [2] - 1:13, 1:14
**trial** [11] - 6:24, 7:1, 7:16, 9:19, 17:7, 18:3, 21:22, 23:10, 26:4, 41:21, 41:24
**tried** [1] - 23:14
**true** [2] - 18:11, 43:10
**try** [1] - 11:17
**trying** [2] - 13:1, 28:11
**two** [4] - 19:8, 19:18, 21:8, 41:21
**type** [1] - 8:10

## U

**U.S** [6] - 1:3, 21:12, 26:10, 26:16, 36:25, 37:12
**U.S.C** [1] - 26:13
**uncomfortable** [2] - 11:23, 22:2
**under** [7] - 15:12, 28:7, 28:11, 29:5, 29:7, 37:9, 37:10
**understood** [1] - 21:17
**UNITED** [1] - 1:1
**United** [4] - 5:6, 43:7, 43:9, 43:14
**unknown** [3] - 31:15, 32:5, 32:8
**unless** [2] - 25:17, 38:6
**up** [10] - 5:15, 8:9, 13:3, 15:15, 23:8,

23:9, 26:21, 27:17, 29:13, 38:25

## V

various [2] - 13:17, 21:2
veto [2] - 32:23, 32:24
vex [1] - 41:21
video [7] - 9:6, 11:11, 12:8, 13:11, 15:3, 15:5, 23:14
videos [1] - 13:18
view [1] - 12:11
violation [3] - 26:13, 34:7, 34:8
violence [1] - 22:16
violent [2] - 6:9, 20:23
VISHAL [1] - 1:5
vs [1] - 1:7

## W

wait [2] - 28:19, 37:22
waiting [2] - 37:20, 39:15
waive [1] - 33:14
waiver [1] - 32:8
walk [2] - 11:1, 12:14
walking [1] - 19:14
wants [4] - 15:12, 27:12, 36:18, 36:19
warnings [1] - 7:23
warrants [1] - 8:12
WASHINGTON [30] - 2:5, 5:25, 8:25, 9:3, 9:7, 9:21, 10:4, 10:17, 12:3, 13:1, 13:10, 14:3, 14:14, 14:23, 15:5, 15:23, 16:11, 16:15, 17:11, 17:21, 17:25, 18:11, 19:18, 20:3, 20:8, 20:21, 21:17, 23:20, 24:14, 36:21
website [3] - 18:13, 18:17, 19:15
WEDNESDAY [1] - 5:1
Wednesday [1] - 1:14
WEST [1] - 1:24
WILLIAMS [1] - 2:16
WILLIAMSON [19] - 2:12, 8:23, 11:7, 11:13, 12:18, 12:20, 13:21, 13:23, 14:5,

15:10, 21:24, 22:8, 22:21, 22:23, 23:5, 27:2, 27:10, 35:18, 36:9
WITNESS [1] - 3:1
witness [9] - 3:2, 7:8, 17:6, 17:12, 18:4, 20:10, 25:19, 26:14
witnesses [5] - 3:4, 10:18, 11:5, 11:20, 21:21
wondering [1] - 41:20
words [7] - 7:2, 10:13, 15:2, 27:20, 28:19, 33:3, 40:21
worse [2] - 29:24, 29:25
Wu [1] - 5:7
WU [1] - 1:3

## Y

yelling [1] - 6:7
yesterday [4] - 6:6, 13:5, 15:11, 18:19
yourselves [1] - 38:7

## Z

ZELDES [1] - 2:4